**Ronald Del RAINE, Plaintiff-Appellant,**

v.

**Norman CARLSON, individually and in his official capacity as Director of the Federal Bureau of Prisons, et al., Defendants-Appellees.**

No. 86–1740.

United States Court of Appeals, Seventh Circuit.

Argued April 10, 1987.

Decided Aug. 14, 1987.

Rehearing Denied Oct. 21, 1987.

---

James T. McKeown, Foley & Lardner, Milwaukee, Wis., for plaintiff-appellant.

Richard H. Lloyd, Asst. U.S. Atty., Frederick J. Hess, U.S. Atty., St. Louis, Ill., for defendants-appellees.

Before BAUER, Chief Judge, and POSNER and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

This extraordinary prisoner-rights case, now 14 years old and still in the pretrial stage with respect to major issues, exhibits the characteristic pathology of contemporary federal litigation, in which substantive and procedural complexity interact to create monumental confusion and delay.

Ronald Del Raine murdered two policemen in the course of a bank robbery and in 1968 was sentenced to 199 years in prison. In 1972, while in the federal prison in Leavenworth, Kansas, Del Raine was placed in solitary confinement without a hearing, as a suspected ringleader of a prison strike by Mexican-American prisoners, though Del Raine is not Mexican-American. He was shortly transferred to a segregated facility at the federal prison in Springfield, Missouri, and then to the "control unit" at Marion federal prison in Illinois. Marion's control unit is the highest-security facility in the United States, and its inmates live virtually in solitary confinement.

In 1973, while at Marion, Del Raine filed the present suit, in the Southern District of Illinois, against the head of the federal prison system (Norman Carlson) and a number of other prison officials. The suit asked that he be released from segregation, that the order placing him in segregation be deleted from his prison record ("ex-pungement"), and that damages be awarded for the period that he had already spent in segregation. The district judge ruled that service on the U.S. Attorney "shall constitute sufficient service on the respondents," and the U.S. Attorney was duly served on June 20, 1973, six days after the filing of the complaint. In 1974 Del Raine's case was tried, and the judge ruled that Del Raine was entitled to a hearing on the propriety of his confinement to segregation as a disciplinary measure. The judge did not address the issues of ex-pungement and damages. Rather than hold the hearing the prison authorities released Del Raine from segregation.

Del Raine appealed from the district judge's failure to grant him any relief on his requests for expungement and damages. For reasons unknown the processing of the appeal was long delayed, but in 1979, in an unpublished order, we remanded the case with directions that the district court consider Del Raine's request for expungement and damages. On remand the case was assigned to a magistrate. There was additional unaccountable delay but trial was finally scheduled for October 3, 1983. With only three weeks to trial, the U.S. Attorney unexpectedly moved to withdraw from representing the defendants in their personal as distinct from official capacities, on the ground that he had never been authorized to represent them in their personal capacities. It took 10 months for the magistrate to rule on the motion, but on July 18, 1984, he granted it. On July 31 he ordered Del Raine to serve his complaint on the defendants within 60 days.

Del Raine tried. He knew only Carlson's address, and he tried to serve Carlson by mail, but Carlson failed to acknowledge service. Del Raine then managed to have him served personally. He also served interrogatories on Carlson seeking the addresses of the other defendants. Carlson answered these interrogatories, but not until May 31, 1985. On June 19 Del Raine moved for an extension of time within which to serve the remaining defendants and for an order that the U.S. Marshals Service serve them. The magistrate granted the latter request but did not rule on the

former. Del Raine delivered copies of the summons and complaint to the Marshals Service forthwith, but the Service took its time about serving them on the defendants. The first of the twelve remaining named defendants was not served until November 13, 1985, the sixth not till January 2, 1986. Four summonses were returned unexecuted and Del Raine apparently never requested service on the last two defendants.

In March 1986 the U.S. Attorney—whom the seven served defendants had by now asked to defend them in their personal as well as official capacities—filed a motion to dismiss or (alternatively) for summary judgment, which the magistrate granted, primarily on the ground that Del Raine had failed to make timely service on the defendants. Del Raine has again appealed.

■ As an original matter one might question whether prisoners should be allowed to bring lawsuits complaining about prison discipline and the conditions of their confinement. Cf. *Savage v. CIA,* 826 F.2d 561 (7th Cir.1987); *Tinker-Bey v. Meyers,* 800 F.2d 710 (7th Cir.1986); *McKeever v. Israel,* 689 F.2d 1315, 1324–25 (7th Cir. 1982) (dissenting opinion). Of course there should be some control over the unbridled discretion of prison officials; but whether the federal courts are the appropriate agency to exert that control may be doubted. These courts are being flooded by prisoner litigation; last year 20,842 prisoner civil rights suits were filed in federal district courts. See 1986 Ann.Rep. of Director, Admin.Off. of U.S. Courts 176 (tab. C2). Most of this litigation has very little merit. See, e.g., *Merritt v. Faulkner,* 823 F.2d 1150, 1155– 57 (7th Cir.1987) (concurring opinion). However, unless and until either Congress or the Supreme Court changes the ground rules that have evolved for this type of litigation, all judicial officers in this circuit must exert themselves to handle prisoner cases in conscientious compliance with these rules, complex as the rules have become.

■ An initial mistake in the handling of this litigation was the district judge's ruling in 1973, when the original complaint was filed, that service on the U.S. Attorney would be sufficient. The source of the mistake lies in the dual nature of many prisoner suits, including this one. Suppose, to take a simpler and more common case than this, that a state prisoner wants (1) to be released from custody because the custody violates his federal constitutional rights and (2) to receive damages for the time he has spent in this illegal custody. The first part of the suit would be a suit for habeas corpus under 28 U.S.C. § 2254, brought against the custodian, who would be sued in his official capacity since the prisoner was seeking an official act—release from custody. Exhaustion of state remedies would be required. 28 U.S.C. § 2254(b). The second part of the suit would be a tort suit under section 1 of the Civil Rights Act of 1871, now 42 U.S.C. § 1983. Exhaustion of remedies would not be required, *Patsy v. Florida Bd. of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), and the defendants would be sued in their personal capacities, *Duckworth v. Franzen,* 780 F.2d 645, 649–50 (7th Cir.1985). Ordinarily the dispensation from exhausting remedies is academic in a dual suit, since the prisoner must exhaust in order to obtain the relief that he is seeking under the habeas corpus statute; and of course he cannot escape the duty to exhaust by suing only under section 1983 yet seeking relief available only under the habeas corpus statute. See *Hanson v. Heckel,* 791 F.2d 93 (7th Cir.1986) (per curiam), and cases cited there.

■ The present suit breaks the mold at a variety of points. First, Del Raine is (or was when he brought the suit) seeking release not from prison but just from a more to a less confining form of incarceration; but the habeas corpus statute has been interpreted to embrace this type of plea. See, e.g., *McCollum v. Miller,* 695 F.2d 1044, 1046 (7th Cir.1982). Second, he was seeking not just release but also expungement of the disciplinary sanction from his record; but as his objective in seeking this relief was to enhance his prospects for parole, in effect he was seeking to accelerate his release from prison, and this type of plea also is within the habeas corpus jurisdiction. See *Larsen v. Sielaff,* 702 F.2d 116, 118 (7th Cir.1983).

Third, Del Raine's original complaint, although filed on a form designed for federal prisoners seeking habeas corpus, contained no express allegation that Del Raine had exhausted his remedies. When as in this case a *federal* prisoner is seeking federal habeas corpus (see 28 U.S.C. § 2241(c)(1)), he cannot be required to exhaust state remedies; but he is required to exhaust his federal administrative remedies, which is to say his remedies within the prison system. See, e.g., *Sanchez v. Miller,* 792 F.2d 694, 697 (7th Cir. 1986). From Del Raine's complaint it appears that he made considerable efforts to obtain relief within the prison system. Whether these efforts were sufficiently exhaustive we need not decide; the government does not argue that Del Raine failed to exhaust his administrative remedies, and the argument, not being jurisdictional, is therefore waived. *Jackson v. Carlson,* 707 F.2d 943, 949 (7th Cir.1983); *Anderson v. Miller,* 772 F.2d 375, 377 (7th Cir.1985). The Supreme Court's recent decision holding that exhaustion of state remedies in habeas corpus cases is not a jurisdictional requirement confirms the correctness of these decisions, see *Granberry v. Greer,* — U.S. —, 107 S.Ct. 1671, 1673, 95 L.Ed.2d 119 (1987); and while the Court went on to hold that the district court should sometimes relieve the state from the consequences of its waiver, this holding was based on "interests of comity and federalism," *id.* at 1675, which are not engaged when the question is whether a federal prisoner has exhausted his federal administrative remedies.

There is a fourth respect in which this case departs from the standard format with which we began. Del Raine captioned his original pleading "Complaint for Declaratory Judgment and Injunctive Relief or in the Alternative a Petition for Habeas Corpus," and for many years now the parties have been treating the nondamage portions of the complaint as if this were a civil suit against federal officers under 28 U.S.C. § 1331 rather than a habeas corpus action. Of course Del Raine could not, by the expedient of casting a habeas corpus action as a declaratory or injunctive action against federal officers, escape having to exhaust his administrative remedies, any more than a state prisoner could escape having to exhaust state remedies by casting habeas corpus action as a civil rights suit. Form follows function: a prisoner seeking to get out of custody is suing for habeas corpus regardless of how he captions his suit. *Hanson v. Heckel, supra.* But since the defendants have waived the defense of failure to exhaust remedies, by not raising it in either the district court or this court, the point is academic here.

If Del Raine had been complaining about his conviction or sentence (which he was not), he would have had to file a motion under 28 U.S.C. § 2255, the federal prisoner's substitute for habeas corpus as a post-conviction remedy, rather than under 2241(c)(2). Either way—2241(c) or 2255— he would not have been required to serve his pleading at all. In a section 2255 proceeding the clerk of the court in which the motion is filed serves the U.S. Attorney. See Rule 3(b) of Rules Governing Section 2255 Proceedings in the United States District Courts. In a habeas corpus proceeding the district court orders the custodian to show cause why the writ should not be granted, see 28 U.S.C. § 2243, and the order is the service. Even if the portions of this suit that do not seek damages could be viewed as an ordinary civil suit against federal officers rather than a suit for habeas corpus, service on the U.S. Attorney was not enough. A suit against federal officers in their official capacity (which this suit would have to be to the extent that it sought types of relief, such as expungement or earlier-than-otherwise release from prison, that only officials and not private individuals can provide) is a suit against the United States, see *Kentucky v. Graham,* 473 U.S. 159, 165–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985); and service upon the Attorney General of the United States in Washington, D.C., as well as service upon the U.S. Attorney and the officers named as defendants, is required in such suits. Fed.R.Civ.P. 4(d)(4), (5). But this point, too, is academic, since the defendants have never objected that service on the U.S. Attorney was insufficient insofar as the suit is against them in their official capacities.

 The complaint also and clearly requested damages. But—and this is the fifth departure from our paradigm of the state prisoner's dual suit—this part of the complaint could not be based on 42 U.S.C. § 1983. The defendants were acting under color of federal rather than state law. This is a *"Bivens"* suit, seeking monetary relief directly under the Constitution from the defendants in their personal capacities. See *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). As they were sued in their personal capacities, they had to be served. *Micklus v. Carlson*, 632 F.2d 227, 240 (3d Cir.1980). This requirement is not some mindless technicality. Federal officers are not indemnified for damages that they are ordered to pay for the torts, constitutional or otherwise, that they commit in the line of duty; they must pay the damages personally. They are entitled to know they are being sued. These defendants were not served till long after the commencement of the suit, and for aught that appears did not know about the suit, begun in 1973, until they were served between 1984 and 1986. Some of them have never been served. None has waived his objection to the failure to serve him in a timely fashion.

We note that there is authority for requiring prisoner plaintiffs in *Bivens* cases to exhaust their administrative remedies, even though damages is not one of those remedies. See *Brice v. Day*, 604 F.2d 664 (10th Cir.1979) (per curiam). There is contrary authority, illustrated by *Muhammad v. Carlson*, 739 F.2d 122, 124 (3d Cir.1984), and *Goar v. Civiletti*, 688 F.2d 27 (6th Cir.1982). We need not take sides in this dispute. If there is a requirement of exhaustion in a federal prisoner's constitutional suit for damages, it is waivable, and has been waived by not being argued either in the district court or in this court.

 Was service on the defendants in their personal capacities timely? At the time this suit was brought, the Federal Rules of Civil Procedure placed no limitation on the time within which service must be made; however, a suit could be dis-missed for lack of diligence in prosecuting it, as evidenced by failing to serve the defendant within a reasonable time after filing the complaint. See *Fournier v. Textron, Inc.*, 776 F.2d 532 (5th Cir.1985); *Messenger v. United States*, 231 F.2d 328, 330–31 (2d Cir.1956). In 1983 Rule 4(j) was added to the Federal Rules of Civil Procedure and it requires that service be made within 120 days of the filing of the complaint. But the deadline can be exceeded for "good cause," and in practice this is the same standard as "due diligence" before the rule. See 4 Wright & Miller, Federal Practice and Procedure § 1056, at pp. 187–88 (2d ed. 1987); cf. *Fournier v. Textron, Inc., supra*; *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304 (5th Cir.1985). Under either standard, service on the defendants in this case between 1984 and 1986—more than 120 *months* after the filing of the complaint—presumptively came too late, though only insofar as the request for damages was concerned; for remember that service isn't even required in a habeas corpus suit, which this was insofar as the nonmonetary relief that Del Raine was seeking is concerned. Despite our express remand on the issue of expungement back in 1979, and the fact that the withdrawal of the U.S. Attorney from representing the defendants in their personal capacities could have no effect on the part of the complaint that sought relief from the defendants in their official capacities, the magistrate dismissed the complaint in its entirety—thereby refusing, in the teeth of our remand, to resolve the issue of expungement.

Regarding even damages, we are not persuaded by the magistrate's analysis that service was untimely, despite the long delay. The analysis is perfunctory and over-looks a number of pertinent considerations:

(1) One is Judge Foreman's ruling back in 1973 that service on the U.S. Attorney would be sufficient. We do not suggest that this erroneous ruling provided, by it-self, a valid excuse for Del Raine's delay in serving the defendants; for Del Raine was represented by counsel, who should have spotted the judge's error. But the 1973 ruling does not stand alone.

(2) Until 1983, when the U.S. Attorney moved to withdraw as counsel for the defendants in their personal capacities, no one complained about the delay in service. The failure to complain cannot be attributed to the defendants, who so far as appears didn't even know they had been sued. But by the time the magistrate, without objection by any defendant, allowed Del Raine to file an amended complaint on March 22, 1985, one of the defendants, Carlson, had been served and was being represented in his personal as well as official capacity by the U.S. Attorney, who failed to object. We do not believe, however, that the order of March 22 started the 120 days running again from the date when the amended complaint was filed. The purpose of allowing complaints to be amended is to enable the pleadings to be conformed to the developing evidence rather than to extend the time for service indefinitely.

(3) The defendants' lawyer of choice to represent them in their personal as well as official capacities was in fact served within days of the commencement of the suit back in 1973. The issue of timely service arises because he withdrew for a time, only to be reinstated later.

(4) The defendants do not argue that the long delay in bringing the damages phase of this suit to a head will make it harder for them to defend the suit.

(5) Moreover, prompt service would not have eliminated most of the delay, which is due primarily to the length of time Del Raine's first appeal was gestating in this court and to the sluggishness with which the magistrate conducted the proceedings on remand.

■■■■ In these unusual circumstances, if, as soon as Del Raine realized that he had to serve the defendants personally, he acted with all due diligence to serve them, we would be inclined to think that Del Raine has shown good cause as a matter of law despite the extraordinary length of time that it took him (counting from the onset of the suit in 1973) to serve those defendants whom he ultimately did serve. Cf. *Williams v. Allen*, 616 F.Supp. 653, 655–56 (E.D.N.Y.1985); *Geller v. Newell*, 602 F.Supp. 501, 502 (S.D.N.Y.1984); *Arroyo v. Wheat*, 102 F.R.D. 516 (D.Nev.1984). But Del Raine's diligence in the critical period is in question. On July 31, 1984, the magistrate ordered him to complete service within 60 days. Though he was represented by counsel and had been aware since the U.S. Attorney moved for leave to withdraw in 1983 that the defendants would probably have to be served, Del Raine did not succeed in serving Carlson within the 60–day deadline fixed by the magistrate. Carlson was not served until October 17, more than two weeks past the deadline. (Del Raine mailed the complaint to Carlson within the 60 days, but as his counsel should have known service by mail is not complete until acknowledged, see *Green v. Humphrey Elevator & Truck Co.*, 816 F.2d 877 (3d Cir.1987), and it was not acknowledged here.) It was more than a year before the last (served) defendant was served. Seeking the addresses of the other defendants through interrogatories directed to Carlson was cumbersome and possibly unnecessary (and in any event belated, for as a defendant in his official capacity he had been subject to discovery since 1973). Because prison officials do not want to give their home addresses to prisoners, the U.S. Marshals Service might have agreed with Del Raine's lawyer to serve the other defendants without his first giving their addresses to the Service; at least the lawyer should have tried this route. After 11 years, punctilious promptitude in effecting service is not an unreasonable requirement.

■■■■ The determination whether a plaintiff has exercised due diligence in serving a defendant, or, what is the equivalent inquiry, has shown good cause for missing the 120–day deadline, is a discretionary determination entrusted to the district court, and we are reluctant to substitute our own judgment for that court's. The magistrate's analysis was not adequate, and therefore his determination cannot stand. The district court must redetermine the issue of good cause in light of the discussion in this opinion.

The defendants argued to the magistrate that the damages part of the suit is inde-

pendently barred by the statute of limitations, a "borrowed" statute which we may assume without having to decide is two years, as the defendants argue. Ill.Rev. Stat. ch. 110, ¶ 13–203. The magistrate did not address this argument but the defendants renew it in this court as an alternative ground for affirmance, and of course if it is a good argument it will save the bother of a remand on the damage part of the case. But it is not a good argument.

■ A statute of limitations on a claim stops running when a suit on the claim is commenced, and a federal civil suit is commenced by the filing of the complaint, Fed. R.Civ.P. 3, not by the service of the complaint; hence delays in service do not affect the running of the statute of limitations. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752–53, 100 S.Ct. 1978, 1986, 64 L.Ed.2d 659 (1980), holds that in a diversity case the state rule on when a suit commences overrides Rule 3 for purposes of determining whether the statute of limitations bars the suit. This is not a diversity case, but as the statute of limitations is a (borrowed) state statute of limitations, maybe the state's rule on whether suit is commenced by filing the complaint or by service should control. In *Sentry Corp. v. Harris*, 802 F.2d 229 (7th Cir.1986), we held (and, more important, the Supreme Court later agreed, see *West v. Conrail*, —— U.S. ——, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987)), that Fed.R.Civ.P. 3 governs such cases. But we left open the possibility that an exception for civil rights cases might be based on 42 U.S.C. § 1988, which requires federal courts in civil rights cases to use state common law, as modified by the state's constitution or statutes, where federal law is "deficient" in its provisions. See 802 F.2d at 239. Given Fed.R.Civ.P. 3, however, which makes the statute of limitations stop running when the complaint is filed, we are not aware of a deficiency requiring reference to state law. *West* suggests there is none (see 107 S.Ct. at 1542 and n. 6), though it was not a civil rights case and the borrowed statute of limitations was federal rather than state. What is more, section 1988 does not apply to this case, since although (in its damages

phase) it is a civil rights suit it was not brought under any of the statutes to which that statute applies; a *Bivens* suit is brought under the Constitution directly, not any statute.

However, the cases that require federal courts to borrow the whole state statute of limitations and not just the limitations period, see, e.g., *Johnson v. Railway Express Agency*, 421 U.S. 454, 463–64, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975); *Board of Regents v. Tomanio*, 446 U.S. 478, 483–86, 100 S.Ct. 1790, 1794–96, 64 L.Ed.2d 440 (1980); and *Chardon v. Fumero Soto*, 462 U.S. 650, 660–62, 103 S.Ct. 2611, 2618–19, 77 L.Ed.2d 74 (1983), are best explained not by 42 U.S.C. § 1988 (although they were civil rights cases to which section 1988 applies and they did rely in part on that statute) but by the inseparability of the time period itself from some (though not necessarily all) other provisions of a state's limitations law. See *Hemmings v. Barian*, 822 F.2d 688, 691 (7th Cir.1987). The actual generosity of a statute of limitations depends not only on the nominal period within which suit must be brought but on provisions allowing that period to be extended for various reasons, so that if the federal court borrows just the period it may in fact be giving plaintiffs more or less time than the state that enacted the borrowed statute would have thought appropriate in the circumstances.

■ This reasoning argues for borrowing the provision on commencement of suit, since if suit is deemed commenced by service rather than by the filing of the complaint the effect is to shorten the period of limitations; and thus for making Illinois' rule on when suit commences override Fed.R.Civ.P. 3 in a case where the federal court is borrowing an Illinois statute of limitations. *Checki v. Webb*, 785 F.2d 534, 537 (5th Cir.1986), so holds. But it was a case to which 42 U.S.C. § 1988 was applicable, and with the dubious exception of such cases the Supreme Court's recent decision in *West* makes clear that when a federal court borrows a state statute of limitations for use in a federal-question case the court is to use the federal rule on commence-

ment, not the state rule. So the defendants' argument must fail—and for a second reason as well. The Illinois rule is the same as the federal; suit is commenced by filing the complaint, not by serving the complaint. See Ill.Rev.Stat. ch. 110, ¶ 2–201(a); *Lawrence v. Williamson Ford, Inc.*, 13 Ill.App.3d 880, 886, 300 N.E.2d 636, 640 (1973).

 The magistrate remarked, delphically, that "it also appears that principles of qualified immunity would bar some of plaintiff's claims against certain defendants." Which claims? Which defendants? We are not told. The defendants argue that Del Raine was placed in segregation not as a disciplinary measure for his alleged participation in the strike at Leavenworth but because he was a dangerous prisoner who had tried to escape, and that in 1972 there was no precedent clearly requiring prison officials to conduct a hearing before committing an inmate to administrative segregation for preventive rather than punitive reasons. But it has never been determined what the true reason for Del Raine's protracted confinement in segregation was. There is some evidence that it was as punishment for his alleged participation in the strike. If so he was entitled to certain procedural safeguards, which the district court found back in 1974 he was not given; and this entitlement was clearly established in the case law in 1972. See, e.g., *Gray v. Creamer*, 465 F.2d 179, 185 (3d Cir.1972).

There may be other grounds for dismissing some of the defendants before trial on Del Raine's claim for damages. Some of the defendants were not named in the original complaint; as to them the statute of limitations ran long ago unless it has been tolled on some ground or another or unless they had the notice specified in Fed.R. Civ.P. 15(c)(1) and (2), which governs the relation back of an amended pleading that brings in a new party. See *Maxey v. Thompson*, 680 F.2d 524, 526 (7th Cir. 1982). Some of the defendants have never been served, and surely it is too late now. Some may not have been personally involved in the denial of Del Raine's procedural rights—and there is no doctrine of

respondeat superior or of superiors' liability in section 1983 suits. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691–94, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978); *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1390 (7th Cir.1984). (Del Raine knows he must show the defendants' personal involvement and proposes to show that even Carlson, the head of the federal prison system, was responsible for the alleged denial of due process.) All these matters can be straightened out on remand, if the district court decides that service was timely.

 In any event Del Raine is entitled to relief in the form of expungement of the record of his confinement to segregation. Back in 1974 the defendants were ordered to give him a hearing. They decided rather than do that to release him from segregation. If they were unwilling to give him a hearing to determine whether there were grounds for placing him in segregation, they ought to be willing to expunge the segregation from his record. The defendants' argument that Del Raine's request for expungement is moot because the record is too old to affect his chances for parole is unpersuasive. He is still in federal custody and still eligible for parole. In deciding whether to parole him the Parole Commission will consider his disciplinary record—and there is nothing in the Commission's regulations to suggest that it will ignore the fact that a prisoner spent more than two years in the closest confinement possible in the federal prison system, merely because that confinement occurred many years ago. See 28 C.F.R. §§ 2.19(a), (c), 2.36.

So the order to segregate Del Raine must be expunged from his record. With regard to damages, however, a remand is necessary to resolve the issue of timely service, and, depending on how that issue is resolved, to resolve issues of parties, prima facie liability, defenses, and if necessary amount of damages. Circuit Rule 36 shall apply on remand.

REVERSED AND REMANDED.