922 F.2d 841
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jonah Louis GANT, Petitioner-Appellant,
v.
Michael DUTTON, Warden, Respondent-Appellee.
 No. 89-6039.
 United States Court of Appeals, Sixth Circuit.
 Jan. 8, 1991.
 
 Before WELLFORD and SUHRHEINRICH, Circuit Judges, and HOLSCHUH,* District Judge.
 PER CURIAM.
 
 
 1
 Petitioner Jonah Louis Gant appeals from the district court's denial of his petition for writ of habeas corpus. Finding the factual record below to be incomplete, we remand this cause to the district court on the question of mootness.
 
 I.
 
 2
 Appellant was convicted in Tennessee state court in 1985 for armed robbery and aggravated rape. He was sentenced to sixty years imprisonment. On January 14, 1987, Billy Compton, the warden at Fort Pillow State Farm ("Fort Pillow") where appellant was then incarcerated, filed an involuntary administrative segregation report against appellant. The report charged appellant with involvement in the instigation of a work stoppage strike and recommended his placement in involuntary administrative segregation as a consequence of his alleged conduct.
 
 
 3
 The Involuntary Administrative Segregation Board at Fort Pillow ("Board") conducted a hearing on January 17, 1987. Appellant requested that he be given the opportunity to present witnesses on his behalf and that he be granted a continuance to consult with a jailhouse lawyer and to prepare his defense. These requests were denied.
 
 
 4
 Appellant also asked that Corporal Belinda Greer recuse herself from the Board for the reason that she had prior information regarding the hearing. This request also was denied. Appellant then questioned the other two Board members about their familiarity with procedures and administrative segregation placement reports. Both of these Board members told Corporal Greer that they did not want to hear the case because they did not know why the hearing was being held. Corporal Greer requested appellant to leave the room, and in his absence the two other members decided to sit on the Board.
 
 
 5
 Following the hearing, the Board accepted the warden's recommendation and ordered appellant to be placed in the administrative segregation unit at Fort Pillow. With respect to this order, appellant maintains that an administrative segregation placement sheet should have been forwarded by the Board to the warden. Appellant alleges that in his case, the placement sheet had already been executed by the warden prior to his hearing. Appellant also states that after the hearing he made numerous requests to consult with an inmate jailhouse lawyer regarding his proceedings. Although the requests of similarly situated inmates were granted, all of appellant's requests were denied.
 
 
 6
 In addition to placing appellant in administrative segregation, the Board recommended his transfer to another state prison facility. In February, 1987, appellant was transferred from Fort Pillow to Brushy Mountain State Prison ("Brushy Mountain"). At Brushy Mountain appellant remained in administrative segregation due to his earlier status at Fort Pillow.
 
 
 7
 On July 14, 1987, Otis Jones, the warden at Brushy Mountain, filed an additional involuntary administrative segregation report stating that:
 
 
 8
 Since [January] 1987 to date, inmate Gant ... has been involved in a work stoppage, written up for assault on an officer and refusing a direct order while at F.P. This behavior attitude of inmate Gant proceeded to make him a threat to the safe operations [sic] of the institution if he is released from [involuntary administrative segregation at this time].
 
 
 9
 The Board at Brushy Mountain agreed with the warden's report and ordered appellant's continued placement in administrative segregation.
 
 
 10
 Appellant was transferred from Brushy Mountain to the Tennessee State Penitentiary ("TSP") in July, 1987. He remained in administrative segregation at TSP based on his status at Brushy Mountain. While at TSP, appellant was offered the opportunity to return to the general prison population if he signed a "behavioral contract" in which he would agree to conduct himself in a certain manner. Appellant refused to sign the contract on the basis that his confinement was illegal and that he intended to remain in administrative segregation until his dispute was resolved through litigation.
 
 
 11
 Appellant filed his petition for a writ of habeas corpus in the United States District Court for the Middle District of Tennessee, Nashville Division, on September 23, 1987. He challenged the Board's actions at Fort Pillow on various grounds, including that he had been denied ample time to prepare a defense and the opportunity to present witnesses. Appellant sought as relief that he be returned to the status he enjoyed prior to the Board's action and that all references to the Fort Pillow administrative segregation report be expunged from his record.
 
 
 12
 Appellant's petition was referred to United States Magistrate William J. Haynes, Jr. to determine whether it was frivolous or malicious. After reviewing the file, the magistrate determined that an evidentiary hearing was necessary on the issue of frivolousness. A hearing was held on December 22, 1987 at which appellant appeared and testified. On January 14, 1988, the magistrate issued a report and recommendation recommending that the petition be dismissed as moot as to the claims arising from appellant's administrative segregation at Fort Pillow and frivolous as to all remaining claims. The magistrate noted that respondent offered to release appellant from administrative segregation, but that appellant had refused the offer. The magistrate further noted that respondent offered to expunge the Fort Pillow report and all references to the report from appellant's record. Moreover, the magistrate found that there were legally sufficient reasons for appellant's continued confinement in administrative segregation aside from the disputed involuntary administrative segregation report.
 
 
 13
 Appellant filed objections to the magistrate's report and recommendations. On April 19, 1988, Judge Higgins entered an order recommitting the action to the magistrate to consider whether appellant had exhausted his state remedies and whether expungement of records is available by way of a federal habeas corpus petition.
 
 
 14
 The magistrate issued a second report and recommendation on April 24, 1989, in which he found that expungement of records is available under 28 U.S.C. Sec. 2254 and that appellant was not required to exhaust state remedies because resort to the state courts in this case would be futile. The magistrate resubmitted his earlier report and recommendation which had recommended that appellant's petition be dismissed in part as moot and in part as frivolous. Both parties filed objections to the magistrate's second report and recommendation. By memorandum and order dated July 7, 1989, Judge Higgins adopted the magistrate's report and recommendation.
 
 
 15
 Appellant filed a notice of appeal on July 14, 1989. On August 9, 1989, the district court authorized appellant to proceed in forma pauperis and granted a certificate of probable cause. Counsel was appointed for appellant on March 1, 1990. Following the submission of briefs and oral argument, the matter is now before this Court for review.
 
 II.
 
 16
 Federal courts will entertain a habeas corpus petition on behalf of a person if the custody violates the Constitution, laws or treaties of the United States. 28 U.S.C. Sec. 2254(a). We review the district court's judgment on a habeas corpus petition de novo but defer to evidence-supported state court findings of fact. Lundy v. Campbell, 888 F.2d 467, 469 (6th Cir.1989), cert. denied, 110 S.Ct. 2212. Moreover, we review the district court's factual findings in a habeas corpus proceeding for clear error. Ray v. Rose, 535 F.2d 966, 973 n. 9 (6th Cir.1976), cert. denied, 429 U.S. 1026 (1976).
 
 A.
 
 17
 The first issue presented for review is whether appellant properly exhausted his state remedies prior to filing his federal habeas corpus petition. Respondent has elected not to pursue this issue on appeal. Therefore, we have no reason to disturb the district court's conclusion that no clear remedy exists under Tennessee law for the claims raised by appellant.
 
 B.
 
 18
 The second issue presented for review is whether appellant's petition is cognizable under 28 U.S.C. Sec. 2254. Respondent argues that Bell v. Wolfish expressly left unresolved the propriety of using a writ of habeas corpus to challenge conditions of confinement as apart from the fact or length of the confinement itself. 441 U.S. 520, 526 n. 6 (1979). At oral argument, however, counsel for respondent conceded that at least four courts of appeals have answered the question affirmatively. See Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir.1989); DelRaine v. Carlson, 826 F.2d 698, 702 (7th Cir.1987); Boudin v. Thomas, 732 F.2d 1107, 1111 (2d Cir.1984); Streeter v. Hopper, 618 F.2d 1178, 1181 (5th Cir.1980). Given our disposition of this matter, it is unnecessary for us to consider the soundness of these decisions. For our purposes, then, we will assume, but not decide, that appellant's claims are cognizable in a federal habeas corpus petition.
 
 C.
 
 19
 The third and final issue presented for review is whether the district court properly concluded that appellant's claims are moot. In making this determination, the district court partly relied on respondent's offer to release appellant from administrative segregation and to expunge the disputed administrative segregation report and all references to that report from appellant's prison records. Appellant refused this offer because he would be required in return to sign a behavioral contract. We cannot agree with the district court that this conditional offer of release and expungement moots appellant's claims. We note that at the time of oral argument, appellant continued to be in administrative segregation at a fourth facility and references to the disputed report had still not been expunged.
 
 
 20
 The second basis for the district court's conclusion, however, remains: that legally sufficient grounds exist for appellant's continued confinement in administrative segregation independent of the disputed report. Such a basis is arguably provided by the second administrative segregation report filed by the warden of Brushy Mountain. This report notes that appellant had been written up for assaulting a guard and disobeying an order while still at Fort Pillow. Appellant does not deny that he assaulted the guard or disobeyed the order; nor does he complain of any lack of due process with respect to the disciplinary procedures resulting from these acts. Respondent contends, and the district court agreed, that based on these subsequent acts appellant would have been placed in administrative segregation regardless of the disputed proceedings at Fort Pillow. Yet in making his report, the warden at Brushy Mountain specifically relied not only on the assault and the disobeying of the order, but also on appellant's alleged involvement in the work stoppage at Fort Pillow. Thus, there is a factual issue of whether appellant would have been placed in administrative segregation at Brushy Mountain if the disputed report at Fort Pillow had not been a part of his prison record. We do not believe that the record below is sufficient to resolve this issue and, accordingly, we cannot say whether appellant's petition is moot.
 
 III.
 
 21
 For the foregoing reasons, we REMAND this cause to the district court on the question of mootness for a determination of whether appellant remains in administrative segregation for reasons independent of his alleged involvement in the work stoppage at Fort Pillow. If the district court determines upon remand that the reasons for appellant's continued confinement in administrative segregation are not independent of this conduct, then the district court shall proceed to the merits of appellant's petition.
 
 
 22
 WELLFORD, Circuit Judge, concurring.
 
 
 23
 Based on the record before us, I would conclude that as of July 14, 1987, petitioner Gant was properly placed in administrative segregation at the Brushy Mountain, Tennessee, prison facility. Gant's transfer from Fort Pillow to Brushy Mountain in February 1987, and again later in 1987 to another state prison, indicates no basis of a cause of action based on a habeas corpus petition. Later Gant was transferred to the Tennessee State Prison (TSP) at Nashville and remained in administrative segregation.
 
 
 24
 This action is one for habeas corpus relief, not for 42 U.S.C. Sec. 1983 relief if, in fact, Gant was improperly confined in administrative segregation for alleged instigation of a work stoppage at Fort Pillow. This action was brought after Gant was transferred to TSP, and we are concerned in this action only with the circumstances of his administrative segregation at that facility. His basis for complaint and relief is averred "malicious, capricious, arbitrary and vindictive" action by respondents "against petitioner at the Tennessee State Main Prison in Nashville." Petitioner also seeks expungement of his Fort Pillow administrative segregation report.
 
 
 25
 This complaint for expungement is based upon alleged violations by defendants of Tennessee Department of Corrections policies and procedures in denying him an opportunity "to marshall evidence" and "prepare a defense" at a hearing on disciplinary charges at Fort Pillow.
 
 
 26
 Assuming that petitioner is entitled to expungement under a habeas corpus complaint, I would concur in a limited remand for the district court to decide whether impermissible, unreasonable, and/or discriminatory conditions[1] were attached by respondents at TSP to the offer to release Gant from administrative segregation, and/or to expunge any records of his Fort Pillow confinement (but not his Brushy Mountain confinement which I deem to be appropriate).
 
 
 
 *
 The Honorable John D. Holschuh, Chief District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 During oral argument Gant's counsel conceded that he had "no problem" with any drug screen requirements at TSP