**Robert RAMIREZ, Petitioner–Appellant,**

**v.**

**Cecil A. TURNER,\* Warden, United States Penitentiary–Marion, Illinois, Respondent–Appellee.**

**No. 90–1818.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 11, 1992.

Decided March 23, 1993.

---

\* Successor in office to Gary L. Henman, respondent originally named. Federal Rule of Civil Procedure 25(d)(1).

Jerold S. Solovy, Scott I. Hamilton (argued), Jenner & Block, Chicago, IL, for petitioner-appellant.

Laura J. Jones, Benton, IL (argued), for respondent-appellee.

Before CUDAHY and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Robert Ramirez is currently incarcerated in the United States Penitentiary at Marion, Illinois, serving consecutive sentences of life and 99 years, imposed in 1981. Without a lawyer, but with the assistance of a fellow inmate, he has filed a petition for *habeas corpus,* alleging that discipline was imposed on him without due process. He had previously been an inmate at Marion, but had been transferred to Leavenworth. He had been charged at Leavenworth with involvement in a drug operation. One part of the discipline imposed was transfer back to Marion. The district court denied his petition because it found that the discipline did not impair any liberty interest. So holding, the court did not consider whether the procedure fulfilled the requirements of due process.

On appeal, his counsel, appointed by this court, argues that three types of liberty interest were impaired: (1) he was deprived of good time; (2) he had a liberty interest in remaining in a prison other than Marion, earned by good conduct at Marion, before transfer to Leavenworth; (3) the record of the disciplinary proceeding and disposition will adversely affect his chances for parole.

He claims three areas in which the disciplinary proceeding lacked due process: (1) the disciplinary committee (IDC) failed to establish the reliability and past accuracy of the confidential informants; (2) an officer and the chairman of the IDC were biased against Mr. Ramirez; and (3) the IDC refused to permit Mr. Ramirez to call a witness in his defense.

We must decide whether any of the alleged liberty interests qualify as such. If any does, then the claims of lack of due process must be resolved.

**Loss Of Good Time**

The IDC Report, issued after the hearing of March 18, 1987, listed several penalties imposed. The first is wholly blacked out. The others are "Terminate All Social Visits for (1) year, 45 days DS Recommend Disciplinary Transfer." (The one year termination of social visits and the 45 days of disciplinary segregation have long since expired.) Apparently the blacked out portion originally read: forfeiture of 90 days statutory good time. The blacking out must have occurred after the warden denied Ramirez' request for relief on April 10, 1987, because that denial recites the forfeiture as one of the sanctions.

One may question what such forfeiture meant. Ramirez is serving a life term and was not entitled to good time allowances under 18 U.S.C. § 4161 or § 4162 (repealed effective November 1, 1987, but remaining applicable for five years for an individual who committed his offense prior to November 1, 1987. Pub.L. 98–473, 98 Stat. 2027); *Robinson v. Clark,* 278 F.Supp. 559 (D.C.Ga.1967). In any event, the district court accepted the finding of the magistrate judge that Ramirez was not deprived

of any statutory good time. On this appeal, the government unequivocally takes the position that the sanction did not result in loss of any statutory good time. This court holds that the obliteration of that part of the sanction is effective and binding on the government if, indeed, Ramirez had any good time to forfeit.

### Ramirez' Interest in Remaining in a Prison Other than Marion

The IDC recommended disciplinary transfer, and Ramirez was transferred to Marion. He acknowledges the general doctrine that an inmate does not possess a constitutionally protected liberty interest, in remaining at a particular institution. This is true even if the transfer is labeled disciplinary or punitive. *Castaneda v. Henman*, 914 F.2d 981, 983–84 (7th Cir.1990), *cert. denied*, 498 U.S. 1124, 111 S.Ct. 1085, 112 L.Ed.2d 1190 (1991). He advances two theories, however, why the general doctrine does not apply to his transfer to Marion.

■ Ramirez' first claim is that, "Because of Marion's uniquely harsh conditions of confinement, transfer from Leavenworth to Marion is the 'equivalent' of a transfer from a prison's general population to its Control Unit." He argues that because due process is required before disciplining a prisoner by removing him from the general population to segregation within one prison, it should equally be required before disciplining a prisoner by transferring him from general population of one prison to the harsh and restrictive environment of Marion. He also contends that a violation of equal protection is involved.

Logical or not, however, his argument squarely collides with the holding of *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976) that the due process clause "does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive" even "where the transfer may be said to involve substantially burdensome consequences." *See Miller v. Henman*, 804 F.2d 421, 423 (7th Cir. 1986), *cert. denied*, 484 U.S. 844, 108 S.Ct.

136, 98 L.Ed.2d 93 (1987) and *Bruscino v. Carlson*, 854 F.2d 162, 167 (7th Cir.1988), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3193, 105 L.Ed.2d 701 (1989).

■ Ramirez' second theory is that he has "earned" his way out of Marion under guidelines issued in 1984 by the warden at Marion.

These are guidelines for the operation of a section of Marion known as B Unit. They provide that a Marion inmate must, as a general rule, have had 18 months clear conduct to be eligible for B Unit. A unit team evaluates potential B Unit inmates. When the team considers an inmate appropriate for placement in B Unit, it so recommends. A screening committee makes the final determination. Ordinarily at least six months in B Unit will be required before the team will recommend a transfer out of Marion. If the warden agrees, he will forward the recommendation to the regional director for disposition. B Unit inmates enjoy relaxation of certain rules, and the unit "will function as near normal to a regular open institutional setting as is physically possible ... B Unit will ... function as the last step out of Marion."

Mr. Ramirez went through the B Unit process and was transferred to Leavenworth in 1986. He contends that the official decision that he had demonstrated his fitness for transfer created a liberty interest in being in an environment less harsh than Marion.

His earned right argument has superficial appeal, but ultimately rests on the proposition that the guidelines, issued by the warden of Marion, imply a restriction on the discretion of the Attorney General to assign inmates. Not only would it be strange to find such a restriction implied in a directive issued by a subordinate, but this court has held that even written directives attributable to the Attorney General do not create entitlements unless issued pursuant to the Administrative Procedure Act or with some other indicia of procedural regularity. *Miller*, 804 F.2d at 424–26.

### Adverse Effect on Chances for Parole

 Ramirez argues that a liberty interest was impaired because the record of the disciplinary proceeding and its disposition will adversely affect his chances for parole and thus result in longer imprisonment. His sentence was imposed before November 1, 1987, and therefore 18 U.S.C. § 4205(a) (1982) remains applicable to him. *Thomas v. Brennan,* 961 F.2d 612, 614 n. 4 (7th Cir.1992).

This court has held that there is *habeas corpus* jurisdiction of an inmate's plea that a disciplinary sanction, imposed without due process, should be expunged in order to enhance prospects for parole. *Del Raine v. Carlson,* 826 F.2d 698, 702 (7th Cir.1987). The *Del Raine* court recognized that the Parole Commission will consider the disciplinary record and is unlikely to ignore discipline as serious as was imposed on Del Raine. *Id.* at 707. Although the penalties here are not as heavy, as in *Del Raine,* it is difficult to think that the Commission would ignore the IDC finding that for a number of months Ramirez had been involved in a sophisticated drug operation which had been responsible for the introduction of narcotics via the visiting room, selling narcotics in the institution, and pressuring inmates to bring in and sell narcotics.

Ramirez is, or will in time be, eligible for parole. A prisoner becomes eligible after serving ten years of a life sentence or of a sentence of over 30 years. 18 U.S.C. § 4205(a). Ramirez indicates that it is unclear whether, considering his consecutive sentences, his eligibility will occur after ten or after 20 years. The magistrate judge thought ten, and the government did not commit itself to either period. Ten years have already expired; 20 will expire in 2001 when Ramirez will be 52. The judge who sentenced him in 1981 construed § 4205(b) as authorizing the judge to delay parole eligibility beyond the time provided in subsection (a), and ordered that Ramirez not be eligible until he had served 33 years. The government treats this order as a recommendation. Brief, at 14, n. 9. Thirty-three (33) years will expire in 2014, when Ramirez will be 65. Although Ramirez' convictions were for first degree murder and conspiracy, termed "brutal and vicious" by the sentencing judge, the record contains no other facts bearing on parole decisions which may be made many years from now. We note that Del Raine murdered two policemen in the course of a bank robbery and was sentenced to 199 years. *Id.* at 701. Parole for Ramirez is not, on its face, an empty prospect. Mr. Ramirez had a liberty interest in preserving his chance for parole.

The evidentiary hearing in this case was held before the magistrate judge, combined with argument on the government's motion for summary judgment. Ramirez appeared without counsel, his request for appointment having been denied. In the course of somewhat rambling testimony, he made three remarks which were construed by the magistrate judge as concessions that parole was unlikely (presumably so unlikely that the disciplinary record would not adversely affect it). The statements were substantially, "I'm doing the rest of my life in prison." The context contained references to loss of good time, and parole was mentioned only once. On that occasion he said, after referring to good time, "To me it doesn't matter. They could have that time, you know, because it don't matter because I'm doing the rest of my life. So the good time or nothing is going to bring my parole date."

The magistrate judge wrote in his report and recommendation: "Although parole during petitioner's lifetime remains a possibility, it appears, by petitioner's own statements, to be unlikely."

 Ramirez filed an objection to this part of the report, as well as others, again with the assistance of his fellow inmate. It became the district judge's duty to make a *de novo* determination of the portions objected to. 28 U.S.C. § 636(b)(1)(C). Although the judge's decision "adopts" the magistrate judge's finding, the judge could not have made a finding *de novo,* as required, on the parole point (or any other) because the transcript of the hearing was

not prepared until more than two months after the date of the judge's decision.

Thus no judicial finding has been made on the parole issue. Moreover, under the circumstances, we think it would be clearly erroneous to rely on these uncounseled and necessarily speculative statements as concessions that his chance for parole at any time in the future is so negligible that the record of this disciplinary proceeding will not affect it.

## Due Process Claims

Because the district court concluded that the disciplinary proceeding did not impair any liberty interest, there has been no disposition of Ramirez' claim that discipline was imposed without due process. The government argues that even if the IDC action impaired a liberty interest, due process standards were fulfilled, and we should affirm on that basis.

The government also argues that because Ramirez did not lose statutory good time, the due process requirements should be assessed under the lesser standard of *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), and not that of *Wolff v. McDonell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *Hewitt,* however, dealt with a decision to confine an inmate to administrative segregation pending investigation. Counsel overlooks the fact that the reason for finding an adverse effect on parole to be within the *habeas* jurisdiction is that acceleration of release from prison is involved. *Del Raine,* 826 F.2d at 702. We think that the *Wolff* standards are applicable here.

### Claimed Bias of IDC Chairman

There must be a "neutral and detached" decision-making body. *Redding v. Fairman,* 717 F.2d 1105, 1112 (7th Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984).

Captain Smith was chairman of the IDC which disciplined Ramirez. Before the magistrate judge, Ramirez testified that on one occasion, Smith "came up ... and told me that he knew who I was ... I want you to know that I got information on you at all

times. He says right now we ain't got nothing to lock you up. He says you can believe me, anybody that breaks a rule, you or anybody that's around you or anybody that has anything to do with you, he says I'm going to send you back to Marion immediately." He also testified that Smith, two days before the hearing, "told me that if I wanted to stay in that institution, you know, that I would have to be on his team.... He wanted me to turn into an informant for him, and then I could stay in his institution."

Smith did not testify before the magistrate judge, although the papers submitted in support of summary judgment included his affidavit in which he denied speaking with Ramirez concerning transfer.

Ramirez' testimony at least suggests, if it does not *prima facie* establish, bias toward Ramirez, as well as substantive involvement of Smith in the circumstances underlying the charge. *See Redding,* 717 F.2d at 1113. His testimony cannot be rejected on the basis of Smith's affidavit alone. We leave to the discretion of the district court whether a further evidentiary hearing is necessary before the issue can be resolved.

Ramirez also challenges the sufficiency of the procedure followed in establishing the reliability of the confidential informants on whom the IDC relied, and claims that the IDC refused to permit him to call a witness. Because there must be further consideration by the district court, in any event, we intimate no opinion on those claims.

Ramirez also argues that the district court abused its discretion in denying his motions to appoint counsel. The magistrate judge stated that in denying counsel, he had considered the factors set forth in *Wilson v. Duckworth,* 716 F.2d 415, 418 (7th Cir.1983), including whether the petitioner has the capability of presenting his case. Judge Stiehl considered the same factors, noting, in addition, "the generally good quality of petitioner's pleadings and the obvious care with which he has framed and argued the legal questions raised."

The quality of the papers filed is indeed good. Ramirez' testimony at the hearing, however, was rambling, disorganized, and often difficult to comprehend. Judge Stiehl had not seen the transcript at the time of his order. It is evident from the transcript that the quality of the papers and ability at presentation must be credited to the fellow inmate who assisted, and not to Ramirez himself. If there is to be another hearing, the district court should give serious consideration to obtaining counsel for Ramirez.

The judgment is REVERSED and the cause REMANDED for further proceedings. Circuit Rule 36 shall not apply.