**Jerry MILLER, Plaintiff–Appellant,**

v.

**C.A. TURNER, et al., Defendants–Appellees.**

No. 00–3820.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 14, 2001.*

Decided Dec. 18, 2001.

Rehearing and Rehearing En Banc Denied Jan. 14, 2002.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before COFFEY, KANNE, and DIANE P. WOOD, Circuit Judges.

### ORDER

Federal inmate Jerry Miller sued various Bureau of Prisons personnel alleging that, by not transferring him to a different prison facility, they failed to protect him from the constant threat of attacks by other inmates at USP–Marion and thus violated his Eighth Amendment rights. After permitting numerous amendments to Miller's complaint, the district court granted dispositive pretrial motions for some defendants, entered judgment as a matter of law during trial as to others, and dismissed the remaining defendants after the jury found in their favor. We affirm.

Miller, who is serving a federal sentence, apparently made many enemies in the prison system and, as a result, was frequently shunted among both federal and state correctional institutions. For example, between 1980 and 1984 Miller was transferred no less than five times, and between 1986 and 1989 he was transferred at least four more times. In September 1989, prison officials in Massachusetts transferred Miller from a state correctional facility back to the federal system due to his disruptive behavior and alienation from other prisoners. Miller ultimately was assigned to the federal penitentiary in Marion, Illinois, in July 1990. Upon arrival, Miller was placed in administrative detention while prison officials investigated his proper security status and prison classification. Defendant Officer Richard Ennis prepared a "Status–in–Population" report that reviewed Miller's disciplinary record, his custody and security classification, his history of separations from other inmates, and Miller's own statements. Prison staff determined that Miller could be placed in the general population and still be housed without exposure to any individuals who might threaten his safety. Over the next several months, Miller was involved in several fights with other inmates, although none of them were individuals whom Miller had identified as a specific threat to him. In July 1991, Miller requested a protective placement and was placed back in administrative segregation (in G–Unit) pending review of that request. Miller's cell unit manager submitted Miller's request to a Special Investigation Supervisor for review. In September 1993, Miller asked to be transferred out of G–Unit; he was returned to general population in December 1993 and remained there without incident until he "graduated" to a pre-transfer program in August 1994.

Meanwhile, however, Miller had brought suit in November 1990 against the United States Attorney General, the Director of the Bureau of Prisons ("BOP"), three BOP Regional Directors, and the warden at USP–Marion. The district court initially dismissed Miller's action as frivolous, but then upon Miller's motion for reconsideration allowed it to proceed against Warden C.A. Turner in his official capacity only. Miller, through appointed counsel, filed two amended complaints in February and April 1993. In the April complaint Miller alleged that fourteen BOP officials (1) violated his disciplinary-hearing due process rights; (2) impeded his right of access to the courts; and (3) subjected him to cruel and unusual punishment by failing to protect him from attacks at the hands of other inmates.

Miller then moved for a preliminary injunction in order to require the defendants to house him in segregation until he could be transferred to a safer facility. The district court denied the motion, and the defendants next moved to dismiss the case. The court granted the motion as to Miller's due process and access-to-courts claims. The court also dismissed five guards for lack of personal jurisdiction and dismissed without prejudice Associate Warden M.L. Collins and Unit Manager M.A. McElmurry for failure to timely effect service.

Thus, only Miller's failure-to-protect claim was allowed to proceed against the remaining seven defendants: (1) Warden Turner; (2) Warden John Clark; (3) G–Unit manager Max Brown; (4) G–Unit team member Mickal Laird; (5) Edward Dwyer, Miller's counselor in G–Unit; (6) Richard Ennis, who reviewed and created placement reports for Miller; and (7) Associate Warden J.W. Booker. The defendants moved for summary judgment on qualified-immunity grounds, which the district court granted as to the monetary claims against Warden Turner and Warden Clark but denied as to the remaining defendants. The district court also noted that, to the extent Miller was seeking declaratory and injunctive relief, his claims would go forward against all defendants.

The case proceeded to trial in September 1996. At the close of Miller's case-in-chief, the defendants moved for judgment as a matter of law. The district court found that the evidence did not support a claim as to defendants Dwyer, Brown, and Laird because these individuals were not involved in decisions regarding Miller's security placements. The next day the jury returned a verdict in favor of Ennis and Booker on Miller's failure-to-protect claim. Miller immediately appealed, but the claims against Collins and McElmurry, which had been dismissed without prejudice in 1994, were still pending and thus the district court's September 26, 1996, entry of judgment was not a final and appealable order under 28 U.S.C. § 1291. We dismissed Miller's appeal for lack of jurisdiction in March 2000. The parties then stipulated to the voluntary dismissal of Collins and McElmurry with prejudice, and the district court again entered judgment on September 28, 2000. Miller filed a timely notice of appeal.

Although Miller's brief is not entirely clear, he appears to be arguing on appeal that the district court erred in (1) denying his request for a preliminary injunction; (2) dismissing his due process claim that 28 C.F.R. § 524.72(g) required prison officials to transfer him to another institution; (3) granting summary judgment to two defendants on qualified immunity grounds; (4) prohibiting him from arguing at trial that 28 C.F.R. § 524.72(g) required mandatory transfer of separatees; and (5) granting judgment as a matter of law on his Eighth Amendment claim to three defendants at the close of his case-in-chief.

We address Miller's Eighth Amendment claim first because its determination resolves other issues as well. Miller's argument, from best we can tell, is an amalgam of federal regulatory law, due process concerns, and the Eighth Amendment proscription against cruel and unusual punishment. Essentially Miller asserts that 28 C.F.R. § 524.72(g) *requires* prison officials to transfer prisoners to a different facility if the prisoner is classified as a "separatee" from other inmates. Once prison officials realized that Miller was to be categorized as a separatee from other individuals at USP–Marion, Miller reasons, they were obligated under § 524.72 to immediately transfer him to another institution. According to Miller, their failure to do so constituted cruel and unusual punishment

because they did not protect him from a known risk.

■ But Miller's argument fails on several grounds. First, § 524.72, which sets forth a general description of an inmate's separation status and advises prison officials to house antagonistic prisoners in separate institutions, is simply an operating rule, not a substantive rule that creates constitutional mandates for prison personnel. Thus, we reject Miller's due process claim that § 524.72 created a liberty interest that required a transfer to another prison and his argument that the district court erred when it denied his preliminary injunctive request for a transfer. An inmate does not possess a constitutionally protected liberty interest in remaining at, or being transferred from, a particular institution, see *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Ramirez v. Turner*, 991 F.2d 351, 353 (7th Cir.1993), and § 524.72 in no way creates a means through which inmates can control their placement at institutions different than the institution where they are housed. In *Babcock v. White*, 102 F.3d 267, 274 (7th Cir.1996), we explicitly declined to hold that § 524.72 gave a prisoner a liberty interest in being transferred to another facility when he is categorized as a separatee, and instead held that a protected liberty interest would arise only if to house the prisoner in a particular institution would impose "atypical and significant hardships" on him in relation to the ordinary incidents of prison life. *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). Miller's claim that he was exposed to threats by other prisoners was not so significant or atypical, regardless of his classification under § 524.72, that it could be construed as a liberty interest under *Sandin*. *See also Crowder v. True*, 74 F.3d 812, 815 (7th Cir.1996) (federal

regulations governing periodic review of inmates in administrative detention did not create liberty interest). For the same reason, the district court did not err in refusing to admit evidence at trial regarding Miller's argument that § 524.72 mandated transfer.

Second, although prison officials have a duty to protect prisoners from violence at the hands of other prisoners, see *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Luttrell v. Nickel*, 129 F.3d 933, 935 (7th Cir.1997), not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety, *Farmer*, 511 U.S. at 834. In order for Miller to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.; Reed v. McBride*, 178 F.3d 849, 852 (7th Cir.1999). The plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that the plaintiff complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir.1996); *McGill*, 944 F.2d at 349. In other words, the defendants had to know that there was a substantial risk that those who attacked Miller would do so, yet failed to take any action. *Sanville v. McCaughtry*, 266 F.3d 724, 733–34 (7th Cir.2001). Moreover, a "mere possibility of violence" or the occurrence of a random act of violence is not sufficient to impose liability on prison officials. *See Estate of Davis v. Johnson*, 745 F.2d 1066, 1071 (7th Cir.1984); *Ward v. Thomas*, 708 F.Supp. 212, 214 (N.D.Ill.1989).

■ In this case, the attacks on Miller were random acts of violence. The inmates who assaulted him were not those

identified on the CIM system as specific threats to Miller. Thus, although prison officials were aware that Miller was categorized as a separatee from certain other inmates, the inmates who attacked him were not on that list, and thus no liability attaches for failing to protect Miller from the random assaults.

█ At the close of Miller's case-in-chief, defendants moved for judgment as a matter of law on the ground that defendants Laird, Dwyer, and Brown could not have violated Miller's Eighth Amendment rights because they had no interaction with Miller during the period that he was attacked. These defendants supervised Miller for a brief period in 1992 and 1993, but the attacks at issue in the case occurred in 1990 and 1991. The district court agreed. After reviewing the relevant portions of the trial transcript, we cannot say that this determination was incorrect. The thrust of Miller's examination of these witnesses focused on whether they agreed with their admissions during discovery. On cross-examination, defense counsel elicited testimony that none of them had supervisory control over Miller during the relevant periods. Accordingly, the district court did not err in concluding that these particular defendants did not exhibit deliberate indifference in failing to protect Miller from attacks during those periods.

For the same reason, the district court correctly granted summary judgment to Wardens Turner and Clark based on qualified immunity. Under this doctrine, government officials generally may perform discretionary functions without fear of potential personal liability for civil damages, *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known," *Kitzman–Kelley v. Warner,* 203 F.3d 454, 457 (7th Cir.2000) (quoting *Harlow,* 457 U.S. at 818). Thus, an official is personally liable for his or her unlawful actions if, "assessed in light of the legal rules that were clearly established at the time it was taken," those actions were legally and objectively unreasonable. *May v. Sheahan,* 226 F.3d 876, 881 (7th Cir. 2000) (quoting *Wilson v. Layne,* 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818, (1999)). At the time the alleged constitutional deprivation occurred, deliberate indifference meant that "the officials must want[ ] harm to come to the prisoner," or, at least, must possess "total unconcern for a prisoner's welfare" in the face of "serious risks." *McGill v. Duckworth,* 944 F.2d 344, 347 (7th Cir.1991). Ordinary or even gross negligence is not enough, *id* at 348; unless public officials know about a problem and intend that it continue, they do not violate the Eighth Amendment. *Duane v. Lane,* 959 F.2d 673, 676 (7th Cir.1992). And, as discussed above, Miller was the victim of random acts of violence which, at the time the attacks occurred, was insufficient to impose liability on prison officials. *See Estate of Davis,* 745 F.2d at 1071. Because there was no underlying constitutional violation, the district court's grant of qualified immunity was proper. *See Estate of Boncher v. Brown County,* 272 F.3d 484, 488 (7th Cir.2001).

AFFIRMED.