Randolph J. GREENE,
Petitioner–Appellant,

v.

Edwin MEESE, III, et al.,
Respondents–Appellees.

No. 87–2344.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 13, 1989.

Decided May 24, 1989.

---

Terry Miller, Lorri Staal, Law Students, Northwestern University School of Law, Chicago, Ill., for petitioner-appellant.

William D. Braun, U.S. Dept. of Justice, Washington, D.C., for respondents-appellees.

Before WOOD, Jr., POSNER and COFFEY, Circuit Judges.

POSNER, Circuit Judge.

The plaintiff is a federal prisoner who complains that while incarcerated in the federal prison at Terre Haute in the fall of 1983 he was denied due process of law by being repeatedly subjected to disciplinary sanctions in retaliation for having rejected homosexual solicitations by guards and resisted improper searches having homosexual overtones. The disciplinary proceedings led to his spending 119 days in administrative segregation (an approximation to solitary confinement) and losing 70 days of statutory "good time" credits; in addition his eligibility for parole was undermined. The suit, brought in 1987 against then Attorney General Meese, the warden of Terre Haute, and a number of prison officers, seeks both the restoration of the good-time credits and parole-eligibility status, and the payment of damages to compensate Greene for being wrongfully punished. The district court construed Greene's complaint as an application for habeas corpus and dismissed the suit because he had not exhausted his administrative remedies.

On the surface at least, this is a hybrid civil rights-habeas corpus suit. Insofar as Greene seeks damages for the infringement of his constitutional right to due process of law, it is a *Bivens*-type civil rights suit (see *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)), that is, a suit brought directly under the Constitution against federal officers. Normally a civil rights plaintiff is not required to exhaust his administrative or judicial remedies. But insofar as Greene seeks the expungement of disciplinary sanctions in order to shorten his stay in prison, he seeks relief obtainable only in a habeas corpus proceeding, *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Larsen v. Sielaff*, 702 F.2d 116, 118 (7th Cir.1983), where exhaustion—of state judicial remedies in the case of state prisoners and federal administrative remedies in the case of federal prisoners—is required. Statutory for state prisoners, see 28 U.S.C. § 2254(b), the requirement of exhaustion is judge-made for federal ones, see, e.g., *Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir.1987); *Sanchez v. Miller*, 792 F.2d 694, 697 (7th Cir.1986), but it is a requirement nonetheless. Greene's suit is based on seven separate incidents in which he was punished for alleged disciplinary infractions, and he concedes that the record does not demonstrate that in every instance he exhausted the administrative remedies available to him in the Bureau of Prisons for the rectification of such punishment.

The rule of complete exhaustion announced in *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), is an interpretation of section 2254(b), the provision requiring exhaustion by state prison-

ers; as far as we know, the question whether complete exhaustion should be required of federal prisoners as well had not arisen until this case. Insofar as *Rose* emphasizes considerations of comity—more concretely, the desirability of the federal courts' respecting decisions by courts of (nominally) other sovereigns, the states—it has no application to a habeas corpus case brought by a federal prisoner. But the opinion in *Rose* also mentions the desirability of avoiding piecemeal litigation, see *id.* at 520–21, 102 S.Ct. at 1204, and in support cites a federal-prisoner case, *Sanders v. United States*, 373 U.S. 1, 18, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963). These bits of authority are not definitive, but we think the rule of complete exhaustion should apply to federal-prisoner cases. If Greene wants a federal district court to adjudicate a group of interrelated claims all involving the same conduct at the same prison in the same period of time, he ought to exhaust all the claims so that the district judge can consider them in one lump at one time.

 Greene advances a number of arguments against requiring exhaustion in the circumstances of this case. One is that exhaustion would be futile because the higher-ups in the Bureau of Prisons are bound to turn down Greene's remaining requests for relief, just as they turned down his other claims. No doubt denial *is* the likeliest outcome, but that is not sufficient reason for waiving the requirement of exhaustion. Lightning may strike; and even if it doesn't, in denying relief the Bureau may give a statement of its reasons that is helpful to the district court in considering the merits of the claim. It is true that a request by Greene for relief now would be untimely; it is almost six years since he was disciplined and he should have complained within 15 days of each incident. 28 C.F.R. § 542.13(b). But "where the inmate demonstrates a valid reason for delay [in filing his complaint], an extension in filing time shall be allowed." § 542.13. Perhaps the extension can be sought even after the time for filing has expired—the regulations are silent on this.

The Bureau must be given a chance to clean up its act before the courts are asked to intervene. If the Bureau declines to act, the question will then arise whether Greene's delay in seeking administrative relief on the unexhausted claims should also forfeit his right to seek judicial relief. Even if the answer is "yes," this will not put Greene completely out of court; he will be allowed to proceed on the five claims that he did exhaust in timely fashion.

Greene next argues that *no* exhaustion should be required here because this is not really a habeas corpus case—a case about the duration of confinement—but a damages case. This would be a good argument if the target of his complaint were homosexual impositions or other indignities visited on him by the guards, for these indignities would not be redressed by a shortening of Greene's remaining term of imprisonment; indeed, such a remedy would bear no relation to the nature of the wrong. But that is not his target: Greene alleges that he successfully *resisted* the homosexual solicitations. Nor does he (in this court anyway) complain directly about the patdown searches and body-cavity inspections that he contends were homosexual assaults, beyond a passing reference in his brief to injury from "unreasonable searches." His complaint, at least his principal complaint, is about the punishment he received (for resisting the assaults, he says), and he seeks restoration of his lost good-time credits and of his former parole-eligibility status as well as damages. The effect of restoration of those lost credits and parole status would be to shorten the expected term of his imprisonment, and this makes the suit a challenge to the duration of his confinement and hence a habeas corpus suit. *Preiser v. Rodriguez, supra,* 411 U.S. at 494, 93 S.Ct. at 1838; *Hanson v. Heckel,* 791 F.2d 93 (7th Cir.1986) (per curiam); see also *Crump v. Lane,* 807 F.2d 1394 (7th Cir.1986); *Scruggs v. Moellering,* 870 F.2d 376, 379 (7th Cir.1989).

This was true, we held in *Hanson,* even when the prisoner is not asking for a reduction in his prison stay (*Hanson* was a suit for a declaratory judgment). For if the prisoner proved that he had been wrongful-

ly deprived of his statutory good time, he could not be forbidden to request its restoration in a habeas corpus proceeding later; there is no defense of res judicata to habeas corpus. A prisoner may not circumvent the requirement of complete exhaustion by first suing for damages or a declaratory judgment and then using a favorable judgment in that suit as the basis for requesting a reduction in the length of his imprisonment. Greene's brief coyly states that "there is nothing in the record which demonstrates the effect of [restoring the good-time credits] on the plaintiff's custodial status." But if the effect were nil, there would be no point in asking for their restoration; indeed, that aspect of the case would be moot. What is true is that if the prisoner has been released from prison and seeks not to annul his conviction but only to obtain an award of damages, it is a pure damages suit and the principle of *Hanson* does not apply. *Smith v. Springer,* 859 F.2d 31, 35 (7th Cir.1988). But this is not such a case.

A panel of this court recently expressed concern about the implications of *Hanson* if read too broadly. See *Viens v. Daniels,* 871 F.2d 1328, 1332–1335 (7th Cir.1989). The panel was worried that "the state could insulate every imposition of discipline from attack under section 1983 by simply revoking one hour, one day, of good time as part of every punishment it imposed." *Id.* at 1333. Two extreme situations should be distinguished. In one the plaintiff by artful pleading seeks to disguise a habeas corpus case as a suit for damages or for a declaratory judgment or for an injunction or whatever; *Hanson* was such a suit. In the other the prison authorities seek to insulate themselves from damages liability by making deprivation of good time a part of every disciplinary sanction. In between are genuine hybrid suits. This would be one if, while attacking the validity of his disciplinary punishment and seeking restoration of the good time credits that he lost as a result of that punishment, Greene were also seeking damages for the disutility that he incurred from spending 119 days in administrative segregation, instead of in ordinary imprisonment with its less restric-

tive conditions. But Greene's brief in this court, prepared by highly competent court-appointed counsel, does not suggest that the modest damages sought in the complaint ($15,000, of which $5,000 are punitive) are to compensate Greene for the indignities of administrative segregation, as distinct from monetizing the loss in good-time credits and parole-eligibility status.

Greene's brief stresses the deterrent effects of a damages award; so far as compensation is concerned, however, the brief states only that "the consequences of prison officials' failure to afford Mr. Greene due process of law were punitive segregation, adverse impact on parole eligibility, and loss of statutory good time, all of which were losses giving rise to money damages." It is unclear from this statement whether or how much damages are being sought for the restrictive conditions of administrative segregation, as distinct from the fact of punishing Greene and the consequences of that fact for the length of his imprisonment. It seems fairly clear, however, that the principal (if not sole) damages sought are for the possible lengthening of his prison stay as a result of the disciplinary proceedings—and insofar as this is so, the claim for damages is spurious, given that Greene, unlike the petitioner in *Smith v. Springer, supra,* is still in prison. If Greene was disciplined unlawfully, he is entitled to the restoration of his good-time credits and parole-eligibility status, mooting the claim for damages for their deprivation. For recall that he *is* demanding the restoration of these things, and if they are restored he will have incurred no damages from their (temporary) deprivation. If on the other hand he was disciplined lawfully, he is entitled neither to restoration of his good-time credits and parole-eligibility status nor to damages for their deprivation, for on that assumption he suffered no wrong. The district judge was therefore correct in concluding that this is really, or at least predominantly, a habeas corpus case, in which exhaustion, meaning complete exhaustion, is required.

The government goes further than we need go in this case and argues that ex-

haustion of administrative remedies should be required in every *Bivens* case attacking a prison disciplinary sanction, even if only damages are sought. As we noted in *Del Raine v. Carlson, supra,* 826 F.2d at 704, the circuits are divided on this issue. The issue would have no possible practical significance in a case such as the present if it were plain that exhaustion was required in *every* hybrid case, as the Third Circuit has held. See *Veteto v. Miller,* 794 F.2d 98 (3d Cir.1986); *Lyons v. U.S. Marshals,* 840 F.2d 202, 204 (3d Cir.1988). But we rejected this position in *Viens,* 871 F.2d at 1334, on the authority of *Wolff v. McDonnell,* 418 U.S. 539, 554, 94 S.Ct. 2963, 2973, 41 L.Ed.2d 935 (1974), which held that when a prisoner seeks damages as well as restoration of good-time credits, he can proceed in federal court with his damages claim even while exhausting his remedies in state court with regard to the restoration of good time. *Wolff* and *Viens,* however, are state-prisoner cases brought under 42 U.S. C. § 1983 rather than under the Constitution directly. Federal judges may have greater freedom in formulating the procedural requirements for suits under the Constitution than they have in interpreting section 1983.

Whether complete exhaustion of Bureau of Prison remedies should be required even in cases where the prisoner is also seeking damages, a remedy not found in the Bureau's arsenal, may depend on what the damages are being sought for. Greene contends not that he was beaten up by the guards or that he was denied medical care or that conditions in the federal prison at Terre Haute, Indiana are reminiscent of the Black Hole of Calcutta, India, but that he was punished for the lawful activity of resisting homosexual advances and assaults. Unless exhaustion is required in such a case, prisoners will have an incentive to bypass the administrative procedures for correcting unlawful prison discipline by suing for damages and raising the identical issues in such suits that they would have raised in a complaint to the Bureau of Prisons if they had filed one. The danger is especially acute in a case such as this, where the claim for damages is largely, perhaps entirely, a vehicle for obtaining a reversal of the disciplinary judgment. Greene's claim for damages will be largely, perhaps entirely, moot if he succeeds in getting his good-time credits and parole-eligibility status restored, and will be rejected on the merits otherwise.

Greene argues, finally, that, at the very least, the district judge should not have dismissed the case with prejudice. Indeed he should not have; the proper remedy for a failure to exhaust administrative remedies is to dismiss the suit without prejudice, thereby leaving the plaintiff free to refile his suit when and if he exhausts all of his administrative remedies or drops the unexhausted claims. See, e.g., *Donnelly v. Yellow Freight System, Inc.,* 874 F.2d 402, 410 n. 11 (7th Cir. 1989); *Nutall v. Greer,* 764 F.2d 462, 464 (7th Cir.1985). The judge should have been explicit that he was dismissing the case without prejudice, since Rule 41(b) of the Federal Rules of Civil Procedure provides that "unless the court in its order for dismissal otherwise specifies, ... any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits," and is therefore with prejudice. A dismissal for failure to exhaust administrative remedies is not, as it might appear to be, jurisdictional. See *Granberry v. Greer,* 481 U.S. 129, 107 S.Ct. 1671, 1673, 95 L.Ed.2d 119 (1987) (state prisoners); *Del Raine v. Carlson, supra,* 826 F.2d at 703. And although the norm regarding the character of dismissals for failure to exhaust administrative remedies may be sufficiently well established to override the implication from Rule 41(b) of the judge's failure to specify that he was dismissing Greene's case without prejudice, it would be better if judges were explicit on this score. We are therefore modifying the order of dismissal to make clear that it is without prejudice to Greene's refiling his suit when and if he completely exhausts his administrative remedies.

MODIFIED AND AFFIRMED.