**Augusto Guillermo FALCON, Petitioner,**

v.

**U.S. BUREAU OF PRISONS, Michael B. Cooksey, Warden, USP–Marion, and U.S. Marshals Service, Respondents.**

No. 94–CV–015–WDS.

United States District Court,
S.D. Illinois.

May 10, 1994.

Augusto Guillermo Falcon, pro se.

Burton H. Shostak, Moline & Shostak, St. Louis, MO, Susan Van Dusen, Albert J. Krieger, Miami, FL, Neil M. Schuster, Benson B. Weintraub, Miami Beach, FL, Scott Srebnick, L. Mark Dachs, Miami, FL, for petitioner.

Laura J. Jones, Thomas E. Leggans, Asst. U.S. Atty., Fairview Heights, IL, for respondents.

## MEMORANDUM AND ORDER

STIEHL, District Judge:

Petitioner, Augusto Guillermo Falcon, is a pre-trial detainee housed at the United States Bureau of Prisons–Marion, Illinois, under indictment in the Southern District of Florida. He has been at USP–Marion since October 15, 1993, and is the only pre-trial detainee currently housed at USP–Marion. Petitioner has filed an application for writ of habeas corpus or, alternatively, for a writ of mandamus, in which he challenges the legality of the conditions and the situs of his detention. Named as respondents are the Bureau of Prisons, Michael B. Cooksey, Warden at USP–Marion, and the United States Marshals Service, collectively referred to as "respondents." The respondents have raised the issue of the Court's jurisdiction over this action, asserting that petitioner cannot challenge his placement at USP–Marion by way of a petition for a writ of habeas corpus. The Court heard oral argument on the jurisdictional issue, and took the matter under advisement.

### I. BACKGROUND

Falcon is under indictment in the United States District Court for the Southern District of Florida as a drug "Kingpin" for importing 75 tons of cocaine into the United States, CR–91–6060–MORENO. Petitioner faces charges for importing cocaine, for conspiracy to distribute, and for operating a continuing criminal enterprise, inter alia. Indicted with Falcon were Salvador Magluta, Orlando Benigno Lorenzo, Juan Adriano Barroso, Luis Florentino Escobedo, Terry Dominick Blanco, Antonio Garrudo, Louis Mendez, Victor Manuel Alvarez and Gustavo Falcon. The government seeks forfeiture of thirteen different parcels of real property in Florida, any personal property contained therein, and in excess of 2 billion dollars which it claims represents the proceeds of the illegal narcotics trafficking alleged in the indictment.

Petitioner alleges that shortly after his arrest on October 15, 1991, he was placed in administrative detention at MCC–Miami, and remained there until November of 1991. On August 25, 1992, after Hurricane Andrew heavily damaged MCC–Miami, petitioner was transferred to FCI–Talladega. Between November 1991 and June 1993, petitioner was held in administrative segregation at either MCC–Miami or FCI–Talladega. On June 29, 1993, petitioner was transferred to USP–Atlanta and placed in the maximum security unit. From August 2 to 6, 1993, he was transferred to the maximum security unit at MCC–Miami for evidentiary hearings. He was then sent back to USP–Atlanta until September 21, 1993, when he was returned to MCC–Miami for hearings preceding the original trial date.

Just before trial was to commence, the district judge granted a motion to suppress on September 30, 1993, prompting an appeal by the government on October 1. On October 7, 1993, petitioner was transported to USP–Marion. As of the date of this Order, the appeal of the suppression ruling is still pending, and the trial date has been rescheduled for January 3, 1995.

The record reveals that a number of potential witnesses in this case have been murdered, including Bernardo Gonzalez; former co-defendant Luis Escobedo; and Juan Acosta, an attorney who allegedly laundered money for Falcon and Magluta. The respondents further allege that other potential witnesses have been shot, but have survived their wounds, including Juan Barroso, an alleged drug smuggler who was scheduled to testify against petitioner.

The Falcon drug cartel is reputed to have vast financial resources available, with estimated gross assets of 55 billion dollars. The record reveals, inter alia, that petitioner is believed to have attempted to corrupt an official at MCC–Miami. Based on security needs, the Marshals Service has requested placement of Falcon at USP–Marion.

### II. DISCUSSION

The petitioner files this action as an "emergency" application for a writ of habeas corpus under 28 U.S.C. § 2241. In the alternative, he seeks a writ of mandamus under 28 U.S.C. § 1361. Petitioner asks this Court to order that he be transferred to another institution. The respondents have chal-

lenged this Court's jurisdiction to grant petitioner the relief he seeks under either writ.

Petitioner alleges that his Due Process and Sixth Amendment right to counsel are being violated while he is housed at USP–Marion. Specifically, Falcon asserts that: (1) his counsel is required to make four airplane trips over two days to confer with him; (2) he must provide at least 48 hours advance written notice to have access to a telephone to call counsel; (3) he is not allowed access to audio or video tape machines which are necessary to review evidence; (4) his confinement has caused his general mental deterioration which has impaired his ability to assist in preparation for trial; and (5) under the provisions of 18 U.S.C. § 4083, confinement in a United States penitentiary is limited to persons convicted of an offense punishable by imprisonment for more than one year, and therefore USP–Marion cannot be used to house pre-trial detainees.

The record reveals that at least some of petitioner's complaints have been resolved. Initially, the Court notes that petitioner is not housed in the segregation unit at USP–Marion, I–Unit, nor in solitary confinement, nor in the control unit, but rather is housed in G–Unit located in Cell G–B–1. Of course, the nature of custody at USP–Marion is well known by this Court. Petitioner asserts that he is held in solitary confinement in twenty-three (23) hour lockdown status. All inmates at USP–Marion are housed in single-man cells, and most are restricted to their cells for 23 hours per day. *See Bruscino v. Carlson,* 854 F.2d 162, 164 (7th Cir.1988), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3193, 105 L.Ed.2d 701 (1989). Petitioner has not sought administrative remedies regarding his placement in G–Unit at USP–Marion. (Cooksey Declaration). USP–Marion has now provided petitioner with access to audio and videotape players for use with counsel, (see Doc. # 28, Ex. B to Second Supplemental Declaration of Walasinski), and the institution has eased its requirements regarding placement of telephone calls to his various counsel. (See Cooksey Declaration). There have been some problems with the type of tape player to which Falcon is permitted

access. (See petitioner's filings of May 2, 1994, and May 6, 1994).

Petitioner asserts that habeas corpus is his proper remedy for transfer to another institution because he seeks a "quantum change" in the level of his custody. *Graham v. Broglin,* 922 F.2d 379, 381 (7th Cir.1991). Petitioner seeks a declaration by the Court that his Due Process and Sixth Amendment rights have been violated; an injunction enjoining respondents from restraining him in his current status; and an order directing the respondents to transfer petitioner to a federal institution closer both geographically and in travel time to his trial counsel and trial venue.

### A. *Detention Standards*

Petitioner was ordered detained after his arrest in October 1991. The record reveals that the petitioner did not contest detention, and waived his right to a detention hearing. After the criminal case was taken off the October 1993 trial docket, the Marshals Service sought placement of the petitioner in a BOP facility which satisfied certain institutional security and control needs. USP–Marion was selected to satisfy those needs. (See Cooksey Declaration). Petitioner seeks detention, however, in a different federal institution which is capable of protecting his Fifth and Sixth Amendment rights. The focus of his request is for a BOP institution physically closer to Miami.

 The law governing pre-trial detention provides for reasonable access to counsel. Specifically, 18 U.S.C. § 3142(i) provides in pertinent part:

> **(i) Contents of detention order.**—In a detention order issued under subsection (e) of this section, the judicial officer shall—
>
> . . . . .
>
> (2) direct that the person be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;
>
> (3) direct that the person be afforded reasonable opportunity for private consultation with counsel;

This statute does not, however, require a pre-trial detainee to be housed within the trial district, or even within the trial state. The Court notes that the language of § 3142(i) is not mandatory. Subsection 2 provides that "to the extent practicable" pre-trial detainees are to be confined separate from convicted inmates. It does not, however, prohibit or preclude pre-trial detainees from being held with convicted inmates. Similarly, subsection 3 provides for "reasonable opportunity for private consultation with counsel." These are guidelines, but are not mandates.

■ The Supreme Court held in the seminal case of *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1873 n. 16, 60 L.Ed.2d 447 (1979), that a pre-trial detainee's claims are governed by the Due Process Clause, not the Eighth Amendment. The traditional function of the "great writ" is to secure release from illegal custody. *Preiser v. Rodriguez,* 411 U.S. 475, 484–85, 93 S.Ct. 1827, 1833, 36 L.Ed.2d 439 (1973). This Court's habeas jurisdiction attaches to the fact or duration of confinement, *id.* at 499, 93 S.Ct. at 1841, not the conditions of confinement. Of course, the vast majority of habeas cases concern convicted inmates who seek release from custody. Petitioner asserts that as a pre-trial detainee he is entitled to protections different from those afforded convicted inmates, and that he may seek relief from those conditions under habeas review.

As the Court stated in *Bell:*

A person lawfully committed to pretrial detention has not been adjudged guilty of any crime. He has only a "judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." And, if he is detained for a suspected violation of federal law, he also had a bail hearing. *See* 18 U.S.C. §§ 3146, 3148. Under such circumstances, the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution.

441 U.S. at 536–37, 99 S.Ct. at 1872–73, *quoting Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975).

Petitioner relies on the ruling *Cobb v. Aytch,* 643 F.2d 946, 957 (3d Cir.1981). In *Cobb,* the court stated:

[P]retrial detainees have federally protected liberty interests that are different in kind from those of sentenced inmates. Unlike sentenced prisoners who, under *Meachum v. Fano,* 427 U.S. 215 [96 S.Ct. 2532, 49 L.Ed.2d 451] (1976), and *Montanye v. Haymes,* 427 U.S. 236 [96 S.Ct. 2543, 49 L.Ed.2d 466] (1976), must look to state law for the protection of their personal liberties, pretrial detainees have liberty interests firmly grounded in federal constitutional law.

Notably, however, in the *Cobb* opinion, the Third Circuit did not hold that habeas was the proper vehicle for challenging the conditions of pre-trial confinement. The remedy sought in the complaint filed in *Cobb* was for relief from the state's violation of the pre-trial detainee's constitutional rights, presumably brought under 42 U.S.C. § 1983. The federal equivalent of § 1983 is an action brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

### B. *Habeas Jurisdiction*

Petitioner asserts that being housed at USP–Marion amounts to detention at the "national segregation" center, and that because he seeks transfer from that type of confinement to a less restrictive institution, he is entitled to the vehicle of habeas relief. "Habeas corpus is an extraordinary remedy, and many decisions say that it is available only to correct errors of a fundamental character—jurisdictional or constitutional, or, where statutory, similar to constitutional defects or otherwise exceptional." *Waletzki v. Keohane,* 13 F.3d 1079, 1081 (7th Cir.1994), *citing Reed v. Clark,* 984 F.2d 209 (7th Cir.), *cert. granted,* —— U.S. ——, 114 S.Ct. 437, 126 L.Ed.2d 371 (1993). The *Waletzki* opinion noted that this is a "vague standard." *Id.* In the discussion of habeas review, the court drew a distinction between those actions

where habeas review is used to challenge a judgment collaterally, and those where it is used to challenge administrative action. The court noted:

> [I]n many immigration and parole cases, habeas corpus is simply the vehicle—and the only vehicle—for obtaining judicial review of administrative action; why in such cases it should be confined to "fundamental" defects eludes us and seems inconsistent with the normal presumption that final administrative action is judicially reviewable.
>
> . . . .
>
> Of course, remedies ought not be disproportionate to the wrongs they aim to rectify. As a remedy, habeas corpus lacks the flexibility of money damages, as it involves releasing, whether at present or in the future, from custody a person who may be dangerous to the community.

*Id.* The court focused its opinion on whether the alleged violation would result "in an arbitrary lengthening of a person's period of imprisonment," as critical to the question of whether habeas review existed. *Id.*

Petitioner qualifies his petition as a request for a "quantum change" in the level of his custody and therefore claims that relief is available under habeas corpus, as stated by the Seventh Circuit in *Graham,* 922 F.2d at 381. Petitioner's reliance on the "quantum change" language of *Graham,* however, is not well-founded. The critical language in *Graham* is as follows:

> If the prisoner is seeking what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation, or the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation—then habeas corpus is his remedy. *But if he is seeking a different program or location or environment, then he is challenging the conditions rather than the fact of his confinement and his remedy is under civil rights law, even if, as will usually be the case, the program or location or environment that he is chal-*

> *lenging is more restrictive then the alternative that he seeks.*

*Id.* (emphasis added). The respondents assert that petitioner is merely seeking a detention location other than USP–Marion, and therefore, under the language of *Graham,* petitioner cannot challenge the fact of his detention at USP–Marion in a habeas action. Petitioner asserts, however, that he is challenging the fact of his confinement, because the nature of detention at USP–Marion rises to the level of a punishment, actionable under the Due Process clause.

Petitioner asserts that the holding in *McCollum v. Miller,* 695 F.2d 1044 (7th Cir. 1982), gives this Court habeas jurisdiction. However, in *McCollum,* petitioner Ramirez–Rodriguez sought transfer out of the control unit to general population within the same institution. The court noted that this was "release from custody in a sense—custody in the control unit [at Marion] conceived as a different sort of confinement from custody in the prison at large." *Id.* at 1046. As the court noted, habeas corpus is available for a prisoner who complains about "a deprivation of liberty brought about by a disciplinary sanction," under the holding of *Wolff v. McDonnell,* 418 U.S. 539, 556–57, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974). *McCollum,* 695 F.2d at 1046. The court states in *McCollum:*

> If, as *Wolff* holds, due process can be violated by placing a prisoner in the Control Unit, the prisoner ought to have a remedy that gets him out of it, and habeas corpus is the normal remedy for one unlawfully confined. True, release would not be into the world outside the prison. But habeas corpus can be used to get a person released on parole if his parole was revoked unlawfully, even though in modern thinking parole is a form of custody, *see Jones v. Cunningham,* 371 U.S. 236, 243 [83 S.Ct. 373, 377, 9 L.Ed.2d 285] (1963). This shows that habeas corpus can be used to get from a more to a less restrictive custody—which is what Ramirez–Rodriguez is seeking.

*Id.* This holding, however, does not extend to the situation presented here. In *McCollum,* petitioners asserted that their due pro-

cess rights were violated in prison disciplinary proceedings, and therefore they were deprived of liberty in violation of the Fifth Amendment, and were placed in segregation at the same institution where they were housed. *Id.* at 1045. Here, petitioner's assertion is that his Fifth Amendment rights are violated by the mere fact of his detention at USP–Marion. Petitioner does not assert that the detention process or procedures deprived him of liberty in violation of the Fifth Amendment.

As the court noted in *McCollum,* if there is no "automatic relationship ... between the finding of infraction and the length of imprisonment," habeas review is not the appropriate vehicle to challenge a disciplinary infraction. *Id.* at 1047. In *McCollum,* the court was concerned with Ramirez–Rodriquez's situation because, like the petitioner in *Preiser,* "he lost good time by reason of the infraction." *Id.* Therefore, the disciplinary proceeding was "reasonably likely to delay [his] parole and thus lengthen [his] imprisonment." *Id.* The court applied the following analysis to the case:

> It is in the Parole Board's discretion whether a disciplinary infraction shall delay parole, and if so by how long. *See* 28 C.F.R. § 2.36(b). That makes this case somewhat similar to *Williams v. Ward,* 556 F.2d 1143, 1151 (2d Cir.1977), which held that a "petition challenging parole procedures but not demanding release or the granting of parole" could not be brought under the habeas corpus statute because, "Although the relief sought by petitioner may improve his chances for parole, the question of his release and of the length of his confinement still lies within the sound discretion of the [parole] board...." The proper remedy was therefore an action under 42 U.S.C. § 1983.

*Id.* In Falcon's pre-trial detention situation, transfer to another institution would not have any effect on the fact of his detention, nor on the length of that detention nor, arguably, on the type of confinement to which he is subjected. The record reveals that petitioner has routinely been housed in segregated units in the various institutions in which he has been held. Notably, petitioner does not seek, among the relief described in the petition, release into a "general population" setting.

Nor does petitioner assert that he was denied due process at the time it was determined that he would be detained pending trial. In fact, the record reveals that he did not, and does not here, contest the district court's detention order. Rather, petitioner's assertion of a due process violation is that his detention at USP–Marion amounts to punishment. In addition, petitioner asserts that his detention at USP–Marion violates his Sixth Amendment right to counsel.

As the court noted in *Reed,* 984 F.2d at 211, there must be a link between the alleged unconstitutional confinement and a showing of prejudice to petitioner. "To show that 'the custody'—and not simply the custodian—violates the law, the prisoner must at a minimum trace the prejudicial effect of the error." *Id., quoting White v. Henman,* 977 F.2d 292, 295 (7th Cir.1992). In the petition, Falcon asserts that the stress of the conditions has, in some undescribed manner, affected his mental capacity. These assertions are extremely general, if not vague, and Falcon has not alleged any specific prejudicial effect or the basis of any prejudice, nor does he explain why the conditions are stressful to him. Certainly, no matter where detained, petitioner would be subject to physical conditions similar, (if not identical, or even more restrictive), to those at USP–Marion. The only assertion of actual prejudice is his inability to be close enough to counsel to assist in his defense. This is a Sixth Amendment claim which will be addressed later.

### 1. *Due Process and Transfer to Another Institution*

In *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), the Court stated that the Due Process Clause does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the state's institutions is within the internal limits or range of custody which the conviction has authorized the state to impose." *Id.* at 225, 96 S.Ct. at 2538. Further, "[t]hat life in one prison is much more dis-

agreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules." *Id.*

Petitioner asserts that the application of *Meachum* is limited to transfers of convicted felons, and is therefore not applicable to pre-trial detainees. The Court finds, however, that the analysis of *Meachum* is readily translated to pre-trial detainees. A pre-trial detainee does not have the right to be housed at the facility of his choice, nor does he have a right to remain in the institution to which he was initially, or even at one time, assigned. The relevant question is not whether petitioner is a convicted inmate or a detainee; but whether the Attorney General has the discretion to determine where to detain Falcon and, if so, whether her discretion is limited by mandatory language in a statute or prohibited by regulation. As addressed earlier, the detention provisions of 18 U.S.C. § 3142 certainly do not contain mandatory language limiting the Attorney General's discretion in selecting the appropriate forum for the pre-trial detention of a defendant awaiting trial. As the Court states in *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983), "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons" is not a right protected by the Due Process Clause. *See also Castaneda v. Henman*, 914 F.2d 981, 983 (7th Cir.1990), *cert. denied*, 498 U.S. 1124, 111 S.Ct. 1085, 112 L.Ed.2d 1190 (1991), where the court stated: "It is well-settled that an inmate does not possess a constitutional liberty interest in remaining at a particular institution...." *Id. See also Cooper v. Elrod*, 622 F.Supp. 373, 377 (N.D.Ill.1985).

Here, the Attorney General, or her designees, determined that the petitioner should be housed at USP–Marion for a number of security reasons. Petitioner simply has no Fifth Amendment right to challenge the respondents' decision to house him at USP–Marion, *see In re Gee*, 815 F.2d 41 (7th Cir.1987); *Garza v. Miller*, 688 F.2d 480 (7th Cir.1982), *cert. denied*, 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983); *Falcon v.*

*Knowles*, 807 F.Supp. 1531, 1533 (S.D.Fla. 1992) (where the court rejected Falcon's similar petition for emergency relief brought when Falcon was moved to FCI–Talladega, Alabama. Falcon sought immediate transfer to Tallahassee, Florida), absent a determination that his detention rises to the level of punishment.

### 2. *Detention as Punishment*

Petitioner asserts that even if USP–Marion were located in Miami, Florida, his detention at USP–Marion would, nonetheless, constitute a violation of his due process rights. In *Bell*, the Court stated:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. *See Ingraham v. Wright*, 430 U.S. 651, 671–672 n. 40, 674 [97 S.Ct. 1401, 1412–13 n. 40, 1414, 51 L.Ed.2d 711] (1977); *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 165–167, 186 [83 S.Ct. 554, 565–67, 576, 9 L.Ed.2d 644] (1963); *Wong Wing v. United States*, 163 U.S. 228, 237 [16 S.Ct. 977, 981, 41 L.Ed. 140] (1896).

441 U.S. at 535–36, 99 S.Ct. at 1871–72. The *Bell* Court noted that "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense, however." *Id.* at 537, 99 S.Ct. at 1873. The Court recognized that the natural result of detention is that the detainee suffers restriction in his movement, i.e. loss of liberty. *Id.*

> Whether it be called a jail, a prison, or a custodial center, the purpose of the facility is to detain. Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility. And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment."

*Id.* The Court set forth guidance for evaluating whether the "particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word." *Id.* at 538, 99 S.Ct. at 1873.

A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees. Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.

*Id.* at 538–39, 99 S.Ct. at 1873–74 (citations omitted).

In this case, there is nothing in the record to show that petitioner was sent to USP–Marion based on the expressed intent of any governmental official to punish him, nor may such an intent be reasonably inferred from the record. Rather, the government's exhibits in the record, including the *in camera* submissions, reflect that the petitioner poses a substantial security risk, and was transferred to USP–Marion as a result of the security risk he poses. This risk, especially in light of the vast resources available to petitioner, is sufficient justification for the transfer.

18 U.S.C. § 4001(b) vests control of the Federal Bureau of Prisons in the Attorney General. Included in the Attorney General's authority is the classification of inmates. It is evident to this Court that the decision to transfer petitioner to USP–Marion was purely administrative, based on the security concerns implicated by the continued housing of petitioner with his co-defendants, and the limited availability of high level security institutions.

Petitioner asserted at oral argument that the decision to transfer him to USP–Marion was based solely on the matters alleged in the indictment. The Court has reviewed several *in camera* documents which further support the validity of the administrative decision to transfer petitioner to USP–Marion. Petitioner urges the Court to rule on the adequacy of the declaration of Michael W. Garrett, Deputy Regional Director of the Southwest Regional Office, Bureau of Prisons, as a basis for the decision to transfer petitioner. This the Court need not do. The Court finds that the record, read as a whole, supports the decision to transfer. The Court notes, however, that petitioner has responded to several grounds of security concerns raised by the respondents in their submission to the Court, and has shown those grounds to be less than credible. (See Affidavits of Neil Taylor, and Linnea R. Johnson, United States Magistrate Judge). Nonetheless, there are other credible concerns asserted as grounds for petitioner's transfer. The *in camera* submission, including a declaration and supplemental declaration by Garrett, detail the specific security concerns posed by the petitioner, and the housing concerns raised by those security risks. Some of the contents of those declarations are, certainly, too sensitive to disclose, but too serious to ignore. The Court finds that the Attorney General had sufficient grounds to elect to transfer petitioner to the security of USP–Marion.

The Court finds, therefore, that petitioner was transferred to USP–Marion for legitimate, non-punitive security reasons and petitioner's due process violation claim must fail.

## C. *Sixth Amendment Right to Counsel*

■ Initially, petitioner also complained about the restrictions placed upon his counsel with respect to access to petitioner. As noted earlier, under *Reed*, 984 F.2d at 211, the petitioner must establish that his custody at USP–Marion has prejudiced him. Petitioner's only articulated assertion of prejudice is the fact that being housed at USP–Marion violates his Sixth Amendment right to counsel. In support of this, petitioner's counsel asserts that they are required to travel over a two-day period to confer with their client. The Court notes, however, that at least one attorney who has had frequent visits with Falcon, Robert Drew, resides in this district. (See Ex. B to Walasinski Declaration). Drew's office is, in fact, located in the City of Marion. In addition, Falcon has local counsel for this petition in Burton H. Shostak.

It is evident from the record that substantial efforts have been made at USP–Marion to accommodate petitioner's access to counsel. There have been special measures taken to make legal telephone calls available in less than the 24–48 hour time usually required to process requests, in accordance with 28 C.F.R. § 551.117(c). (Declaration of Thomas Charles Peterson). In addition, petitioner has been permitted to have access to three cubic feet of his legal materials at one time, and a cell adjacent to petitioner's contains excess legal materials which may be exchanged upon request. Audio and video machines have been made available to petitioner and his counsel. Although there have been some problems associated with the type of audio machines available to Falcon, it is evident from the correspondence in the file that the authorities at USP–Marion and petitioner's counsel are attempting to resolve the petitioner's needs. This does not, however, present an issue that needs to be resolved by this Court.

28 C.F.R. § 551.117(a) provides that legal visits for pre-trial detainees are to be available seven days a week. USP–Marion is in compliance with that regulation. Attorney visits are available on non-visitation days, and on at least two occasions, USP–Marion has even permitted counsel Krieger and Dachs access to petitioner even though it had no notice. (See Cooksey Declaration). In order to succeed on a Sixth Amendment claim based on placement away from counsel, petitioner must establish actual prejudice in order to prevail. *Reed, id.; Ervin v. Busby*, 992 F.2d 147, 150 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 220, 126 L.Ed.2d 176 (1993). As the respondents note, petitioner's trial was originally scheduled for October 4, 1993, and was continued when the government took an interlocutory appeal from a ruling of the district judge suppressing some evidence. Petitioner's counsel have not argued that they are unprepared for trial, or that they cannot meet with petitioner due to excessive cost, or even that any of his many counsel are suffering any professional hardship as a result of the travel requirements posed. Rather petitioner generally asserts that due to the nature of the charges against him, and the possible sentence he faces, he deserves better access to counsel.

This argument, however, is one best addressed in the criminal case, because it is only after an adverse judgment that petitioner could assert that he received ineffective assistance of counsel. Or, once Falcon is returned to Miami, counsel could seek a brief continuance from the trial court judge for pre-trial preparation with Falcon. It is not for this Court to interfere with the criminal proceedings in another federal court on the mere speculation that petitioner will suffer some prejudice during the criminal trial. This Court must exercise equitable restraint on this issue.

The Court finds, therefore, that petitioner has not raised a claim for any Sixth Amendment violation which would be cognizable under habeas review because petitioner has not established prejudice. In addition, this Court must exercise equitable restraint on this question.

## D. *Exhaustion of Administrative Review*

■ Based on the previous rulings, the petition for habeas review is subject to dismissal for lack of jurisdiction. However, even had petitioner established that this Court had jurisdiction over the habeas action, the petitioner must, nonetheless, show that he has exhausted his available adminis-

trative remedies before pursuing habeas relief in this Court.

The respondents assert that if habeas jurisdiction lies, Falcon must exhaust the three-tiered administrative remedy process available within the Bureau of Prisons. Petitioner asserts that because he is in the custody of the United States Marshals Service, and not the Bureau of Prisons, administrative review is not available to him. In the alternative, petitioner asserts that exhaustion would be futile in this case.

### 1. Availability of Administrative Review

The three-tiered procedure for filing administrative actions is set forth in 28 C.F.R. § 542.11. The purpose of the administrative remedy procedure, as stated in this section, is to set forth a "procedure through which an inmate may seek formal review of a complaint which relates to any aspect of his imprisonment if less formal procedures have not resolved the matter. This procedure applies to all inmates confined in Bureau of Prisons institutions...." *Id.*

28 C.F.R. § 551.100 provides that the Bureau of Prisons may house pre-trial detainees, and that "policies and standards applicable to persons committed to the custody of the Attorney General apply to detainees designated Pre–Trial Inmates." Petitioner offers no authority for the proposition that pre-trial detainees housed within Bureau of Prisons facilities are exempt or restricted from seeking administrative review of complaints. The Court finds that there is no prohibition, nor any special provisions, limiting administrative relief to convicted inmates, and therefore, the Court rejects petitioner's contention that the administrative remedies available do not apply to pre-trial detainees.

### 2. Exhaustion Requirement

Generally petitioner must "exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan,* — U.S. —, —, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992). This exhaustion requirement attaches to actions brought under 28 U.S.C. § 2241. In *Greene v. Meese,* 875 F.2d 639 (7th Cir.1989), the court discussed the necessity to exhaust

remedies, in the face of an assertion of futility:

One [argument] is that exhaustion would be futile because the higher-ups in the Bureau of Prisons are bound to turn down [petitioner's] remaining requests for relief, just as they turned down his other claims. No doubt denial *is* the likeliest outcome, but that is not sufficient reason for waiving the requirement of exhaustion. *Lightning may strike; and even if it doesn't, in denying relief the Bureau may give a statement of its reasons that is helpful to the district court in considering the merits of the claim.*

. . . . .

The Bureau must be given a chance to clean up its act before the courts are asked to intervene.

*Id.* at 641 (emphasis added).

Petitioner points to several exceptions to the exhaustion requirement, none of which controls this review in light of the Seventh Circuit's clear pronouncement in *Greene.* Petitioner asserts, in addition, that his counsel has had informal discussions with Bureau of Prisons personnel and the United States Attorney's office for the Southern District of Florida, concerning his need to be transferred to another institution. Falcon claims that these requests have been denied, as, surely, will be any administrative complaints. The Court notes, however, that the discussions between counsel and the Attorney General's representatives are precisely those "less formal procedures [which] have not resolved the matter," as provided in § 542.10. The Court must allow the available administrative remedies to be concluded before engaging in review of the administrative decisions of the Attorney General to house Falcon at USP–Marion. Accordingly, the Court rejects petitioner's contention that the exhaustion of available administrative remedies would be futile, and finds that even if the Court had habeas jurisdiction over petitioner's claim, it would be subject to dismissal for failure to exhaust administrative remedies. Indeed, this exhaustion requirement would prevent the Court from entertaining petitioner's claims even if he presented them in a civil rights action for injunctive relief.

The Court finds, therefore, that it is without jurisdiction to entertain the petition for a writ of habeas corpus and it is **DISMISSED** for lack of jurisdiction.

### III. *MANDAMUS JURISDICTION*

Petitioner asserts that this Court has jurisdiction pursuant to 28 U.S.C. § 1361, commonly known as the Mandamus Act. Section 1361 provides: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." The Seventh Circuit held in *Banks v. Secretary of Indiana Family & Social Services Admin.*, 997 F.2d 231, 244 (7th Cir.1993):

> This grant of jurisdiction has been substantially limited in scope by recent decisions of this court. *See Scalise v. Thornburgh*, 891 F.2d 640, 647 (7th Cir.1989), *cert. denied*, 494 U.S. 1083 [110 S.Ct. 1815, 108 L.Ed.2d 945] (1990).... The extraordinary remedy of mandamus "is traditionally available to compel a ministerial duty owed by the agency and then only when the statute defining that duty is 'clear and free from doubt.'" *Jarecki v. United States*, 590 F.2d 670, 674 (7th Cir.) (quoting *Smith v. Grimm*, 534 F.2d 1346, 1352 (9th Cir.1976), *cert. denied*, 444 U.S. 829 [100 S.Ct. 55, 62 L.Ed.2d 37] (1979). It follows that the judiciary, through a writ of mandamus, cannot compel a federal official to perform any function unless the official is clearly directed by law to do so. *Save the Dunes Council v. Alexander*, 584 F.2d 158, 162 (7th Cir.1978).

*Id.* (citations omitted). The *Banks* decision set forth three jurisdictional prerequisites for mandamus actions:

> We have resolved these general principles into certain jurisdictional prerequisites. The settled law of this circuit is that mandamus jurisdiction may be invoked only when there is: (1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; (3) no other adequate remedy available.

*Scalise*, 891 F.2d at 648. *See also Burnett v. Bowen*, 830 F.2d 731, 739 (7th Cir.1987). *Id.* at 244–45. The court noted that the Seventh Circuit has long recognized that "the mandamus remedy is only available 'under exceptional circumstances of clear illegality.'" *Id.* at 244 n. 13, *quoting Americana Healthcare Corp. v. Schweiker*, 688 F.2d 1072, 1084 (7th Cir.), *cert. denied*, 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 434 (1982).

As the Court has previously determined, petitioner does not have a clear right to transfer to an institution other than USP–Marion. In addition, petitioner has not shown that any of the named defendants would have a plainly defined and peremptory duty to order that the petitioner be transferred to another institution. Finally, because petitioner has administrative review available, he has an adequate remedy at law. Therefore, the Court is without jurisdiction to grant petitioner the relief he seeks under the mandamus statute, and the petition for mandamus is **DISMISSED.**

### IV. *ALLEGED STATUTORY VIOLATIONS*

Petitioner finally asserts that his pre-trial detention violates 18 U.S.C. § 3142(i)(2), § 3142(i)(3), and § 4083.

Sections 3142(i)(2) and (i)(3), the detention provisions discussed earlier, require the reasonable opportunity of private consultation with counsel and housing, to the extent practicable, separate from convicted inmates. As noted earlier, on October 7, 1993, petitioner signed a work and separation waiver indicating that he waived his separation requirement to be able to participate in a work and/or program assignment outside of his unit. Moreover, petitioner is housed in a range on G–Unit where he is separated from convicted inmates. He has been afforded reasonable access to counsel as discussed earlier.

Section 4083 is simply not applicable to the decision to house a pre-trial detainee, as the Attorney General may house pre-trial detainees at Bureau of Prisons facilities. *See, e.g. United States v. Richardson*, 687 F.2d 952 (7th Cir.1982) (which sets forth five catego-

ries of persons who may be housed, pre-conviction, in federal penitentiaries, including pre-trial detainees). The Court notes that immigration detainees, such as Cuban refugees, are frequently held in penitentiaries. *See, e.g. Garcia–Mir v. Smith,* 766 F.2d 1478 (11th Cir.1985), *cert. denied,* 475 U.S. 1022, 106 S.Ct. 1213, 89 L.Ed.2d 325 (1986) (where Mariel Boatlift Cuban refugees were detained at USP–Atlanta); *United States v. Buide–Gomez,* 744 F.2d 781 (11th Cir.1984). Furthermore, petitioner's assertions of violation of these statutes are not cognizable in a habeas petition as they do not address the fact or duration of his detention.

## CONCLUSION

Accordingly, the Court finds that it is without jurisdiction to consider petitioner's application for a writ of habeas corpus or for mandamus, and this matter is **DISMISSED** for lack of jurisdiction.

**IT IS SO ORDERED.**